Hutcheson, Justice.
The Southern Broadcasting Company, a private corporation organized for pecuniary gain and engaged in the business of operating a broadcasting station in the City of Atlanta known as Radio Station WGST, pursuant to a contract between it and the Georgia School of Technology, owner of the station and in the name of which the station was licensed by the Federal Communications Commission (formerly Federal Radio Commission), brought its petition seeking to enjoin the city from *10 selling certain personal property owned by it, which had been levied on under a fi. fa. issued by the city, pursuant to an ordinance levying a business license or occupation tax of $300 a year on “radio broadcasting stations,” the fi. fa. being for a quarterly payment which the plaintiff had failed to make. The plaintiff contended that the assessment of such tax was a burden on interstate commerce; that the radio broadcasting station was being operated by virtue of a license issued by the Federal Communications Commission, and was therefore a Federal agency and not subject to a municipal occupation tax; and that it was operating-said station pursuant to a contract of employment with the Georgia School of Technology, a department of the State of Georgia, and that in effect the tax was a tax upon a governmental agency of the State of Georgia. The case was submitted to the judge on an agreed statement of facts, which, so far as pertinent to the decision rendered herein, is substantially as follows: The physical equipment used in broadcasting, such as transmitters, was located on the campus of Georgia School of Technology, a mile and a half from the Ansley Hotel in which the offices and broadcasting-rooms of the plaintiff are located, containing microphones, transmitters, and other physical equipment used in broadcasting. The equipment located at the school was owned by it, and that in the hotel was owned by plaintiff. “The actual method of broadcasting was done in two ways: First, where programs originated in other cities in Georgia or in other States, they were brought by telephone wire to- the office of the plaintiff in the hotel and there relayed by telephone wire to the transmitter at the school, and from there broadcast over the air to whomever might receive them in Georgia and other States. Second, those broadcasts that originated in the City of Atlanta in the studio at the hotel were transferred by telephone wire to the transmitters at the school and from there broadcast to listeners in Georgia and other States. Part of the time is bought and contracted for by the Columbia Broadcasting System, and programs are furnished by said system over special telephone wires from various points in other States, which programs are then transmitted by the plaintiff station to the listening public in and about the City of Atlanta and to those owning radio receiving sets, who might receive such broadcasts, in Georgia and in any of the other States of the Union. The bal *11 anee of the time is sold to local persons, firms, or corporations, which represents about 70 per cent, of the time sold. Part of the time is devoted wholly and solely to the public interest, such as musical programs for entertainment, weather reports, news, and information from governmental agencies. All contracts for the sale of time are made in the name of the plaintiff, and payments are made to it, and it in turn accounts to the school. The plaintiff’s revenue is made up entirely of a certain percentage of these receipts.” The judge granted a permanent injunction, holding that the occupation tax was invalid as a burden on interstate commerce, and was a tax on an agency of the Federal government; and that the plaintiff ivas an employee of the school, and for that reason the tax was upon a governmental agency of the State of Georgia. The defendant assigned error on these rulings, and on the grant of injunction.
A State or municipality may by appropriate legislation require payment of an occupational tax from one engaged in both intrastate and interstate commerce; but in order that the tax shall be valid, it must appear that it is imposed solely on account of the intrastate business; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the imposition; and that the person taxed could discontinue the intrastate business without withdrawing also from interstate business. Sprout v. South Bend, 277 U. S. 163 (48 Sup. Ct. 502, 73 L. ed. 833, 62 A. L. R. 45); Postal Telegraph-Cable Co. v. Charleston, 153 U. S. 692 (14 Sup. Ct. 1094, 38 L. ed. 871); Osborne v. Florida, 164 U. S. 650 (17 Sup. Ct. 314, 41 L. ed. 586); Kehrer v. Stewart, 197 U. S. 60 (25 Sup. Ct. 403, 49 L. ed. 663, affirming 117 Ga. 969, 44 S. E. 854); Smith v. Clark, 122 Ga. 538 (50 S. E. 480). With these rules in mind, let us first determine whether the plaintiff is engaged in interstate commerce. There is no dispute of the fact that the plaintiff is broadcasting for hire advertising programs for customers to listeners beyond the State. In Fisher’s Blend Station v. Tax Com., 297 U. S. 650 (56 Sup. Ct. 608, 80 L. ed. 956), it appeared that <eAppellant’s entire income consists of payments to it by other broadcasting companies or by advertisers for broadcasting, from its Washington [State] stations, advertising programs originating there or transmitted to *12 them from other States by wire. Appellant “sells time” to its customers at stipulated rates, during which it broadcasts from its stations such advertising programs as may be agreed upon. During such time as is not sold, it broadcasts, at its own expense, “sustaining” programs, as required by the regulations of the Federal Eadio Commission. The customers desire the broadcast to reach the listening public in the areas which appellant serves, and a large number of persons, many of them in other States, listen to the broadcasts from appellant’s stations.” The question involved was “whether a State occupation tax, measured by the gross receipts from radio broadcasting from stations within the State, is an unconstitutional burden on interstate commerce.” In its opinion the court said: “Appellant is thus engaged in the business of transmitting advertising programs from its stations in Washington to those persons in other States who ‘listen in’ through the use of receiving sets. In all essentials its procedure does not differ from that employed in sending telegraph or telephone messages across State lines, which is interstate commerce. Western Union Telegraph Co. v. Speight, 254 U. S. 17 [41 Sup. Ct. 11, 65 L. ed. 104]; New Jersey Bell Tel. Co. v. State Board of Taxes, 280 U. S. 338 [50 Sup. Ct. 111, 74 L. ed. 463]; Cooney v. Mountain States Tel. & Tel. Co., 294 U. S. 384 [55 Sup. Ct. 477, 79 L. ed. 934], Pacific Tel. & Tel. Co. v. Washington, [297 U. S.] 403 [56 Sup. Ct. 522, 80 L. ed. 760, 105 A. L. R. 1]. In each, transmission is effected by means of energy manifestations produced a.t the point of reception in one State which are generated and controlled at the sending point in another. Whether the transmission is effected by the aid of wires, or through a perhaps less well understood medium, ‘the ether,’ is immaterial, in the light of those practical considerations which have dictated the conclusion that the transmission of information interstate is a form of ‘intercourse,’ which is commerce. See Gibbons v. Ogden, 9 Wheat. 1, 189” (6 L. ed. 23).
There are other decisions holding that radio communication is interstate commerce. In Whitehurst v. Grimes, 21 Fed. (2d) 787, it was held: “Eadio communications are all interstate [commerce]. This is so though they may be intended only for intrastate transmission; and interstate transmission of such communications may be seriously affected by communications inténded only
*13 for intrastate transmission. Such, communications admit of and require a uniform system of regulation and control throughout the United States, and Congress has covered the field by appropriate legislation. It follows that the ordinance [imposing a license tax on all persons, firms, or corporations operating a radio broadcasting station] is void, as a regulation of interstate commerce.” See also Station WBT Inc. v. Poulnot, 46 Fed. (2d) 671; Trinity Methodist Church v. Federal Radio Com., 61 App. D. C. 311 (62 Fed. (2d) 850); KFKB Broadcasting Asso. v. Federal Radio Commission, 60 App. D. C. 79 (47 Fed. (2d) 670); General Electric Co. v. Federal Radio Commission, 58 App. D. C. 386 (31 Fed. (2d) 630); KVL Inc. v. Tax Commission, 12 Fed. Supp. 497; Chicago Federation of Labor v. Federal Radio Commission, 59 App. D. C. 333 (41 Fed. (2d) 422); Journal Co. v. Federal Radio Com., 60 App. D. C. 92 (48 Fed. (2d) 461). The city concedes, under the decision rendered by the United States Supreme Court in the Fisher’s Blend Station case, supra, and the facts of the present case, that the plaintiff is engaged in interstate commerce; but it contends that the tax is assessed solely on the privilege of doing intrastate business, and that the intrastate business can be separated from the interstate business and can be discontinued without withdrawing from the interstate business. In so contending the city proceeds on the assumption that only those programs originating out of the State and sent to plaintiff by wire for broadcasting are interstate communications; and that the programs Broadcast which originate locally are intrastate communications. Such assumption is erroneous. It makes no difference where the communications originate; the question is do the communications cross a State line. The evidence here discloses that the communications broadcast, whether originating locally or within the State, are broadcast to listeners within and without the State. This constitutes interstate commerce. Fisher’s Blend Station case, supra. In so far as radio communication is concerned, at its present state of development, there can be no physical division of intrastate and interstate communications. The transmission of the communication over the “ether” is an indivisible movement. No State lines divide the radio waves. Federal Radio Com. v. Nelson Bond & Mortgage Co., 289 U. S. 266, 279 (53 Sup. Ct. 627, 77 L. ed. 1166), cited approvingly in Fisher’s Blend Sta *14 tion etc., supra. It is true that the wave may be received by separate receiving sets, both within and without the State; but the communication itself is not divisible in the sense that intrastate communications may be discontinued without withdrawing from the business of broadcasting interstate communications. While the direction of the radio wave has to some extent been controlled, it has not been controlled to the extent that it can be made to stop at a State line and go no further (Station WBT v. Poulnot, supra), or that it can be broadcast from one State into another without being intercepted and received by radio sets within the State from which the broadcast originates. “All radio communication anywhere in the United States travels actually or potentially across State lines; and even if certain radio electric-wave energy, through an accident or otherwise, should lose its force before crossing the State line, yet it potentially interferes with other radio communications passing interstate (Station WBT etc., supra), and is thus subject to regulation by Congress under the interstate-commerce clause of the constitution of the United States. Technical Radio Laboratory v. Federal Radio Com., 59 App. D. C. 125 (36 Fed. (2d) 111, 66 A. L. R. 1355); City of New York v. Federal Radio Com., 59 App. D. C. 129 (36 Fed. (2d) 115). In the first cited case above it was said: “Under the commerce clause of the constitution (article 1, § 8, cl. 3) Congress has power to regulate interstate commerce, and radio communication in general falls within this classification. Whitehurst v. Grimes [supra]; United States v. Am. Bond & Mtg. Co. (D. C.), 31 Fed. (2d) 448; Davis, Law of Radio Communication, p. 29. It may be questioned whether radio broadcasting can in any case be so restricted in practice as to be wholly intrastate in character. It is clear, however, that the broadcasting service of WTBL can not be exclusively intrastate, for its location is such that its electric waves may cross State lines, and may also interfere with the reception of radio communications from other stations.”
The city contends in this connection that under the evidence in the present case the decision by this court in City of Atlanta v. Oglethorpe University, 178 Ga. 379 (173 S. E. 110), involving the same tax, is controlling and requires a reversal in the present case. It appeared from the evidence in that case that radio station WJTL, operating on 100 watts, broadcast programs originat *15 ing locally, which broadcasts were received in this State and other States. The president of the University testified that the broadcasting extended in part to States other than Georgia; that there were located in other States pupils who received educational and religious instruction through the broadcasts from the station, and that the broadcasting reached individuals in other States. Similar testimony was given by the operator of the station. Expert witnesses for the city testified that under ordinary conditions the coverage of the station would not extend beyond 5 to 25 miles from the station, and that under unusual conditions the broadcast might be heard beyond the State lines. The superior court granted an injunction. In reversing that judgment this court said: “It is claimed by the petitioner that its broadcasting business is interstate, in that some of its messages may go beyond the State line. Even if it is true that some of its messages dO' go beyond the State lines, that does not make it interstate business, especially as there is nothing in the evidence to show that it has received or will receive messages to be transmitted beyond the State lines into other States. But even if it did receive such contracts, its business is certainly almost altogether intrastate; and its income is derived almost entirety, if not altogether, from what might be called intrastate business.” The Oglethorpe case was cited in the Fisher’s Blend Station case, supra, in connection with the following statement from the opinion therein: “Whether the State could tax the generation of such energy [generation of electro-magnetic waves], or other local activity of the appellant, as distinguished from the .gross income derived from its business, it is not necessary to decide.” What “local activity” is, or whether or not “local activity” of a radio-broadcasting station can be taxed by a municipality, it is not necessary to decide in the present case. The tax in the present case, as in the Oglethorpe ease, is an occupation tax on the privilege of operating or doing the business of a “radio-broadcasting station,” and does not purport to be a tax on any “local activity” of the business of broadcasting, such as the “generation of electro-magnetic waves” (Fisher’s Blend Station etc., supra; Utah Power & Light Co. v. Pfost, 286 U. S. 165, 52 Sup. 548, 76 L. ed. 1038); and even if it could be said to apply to the privilege of “radio broadcasting” intrastate, we have shown that such intrastate and interstate communications by radio are insep *16 arable in so far as it may pertain to the ability to discontinue the intrastate ancl still continue the interstate, communications. Such tax is thus a burden on interstate commerce, contrary to the commerce clause of the constitution of the United States. The Oglethorpe case was not a unanimous decision, and therefore is not binding authority. The judge did not err, under the evidence and the above rulings, in granting the injunction against the collection of the occupation tax here involved.
Inasmuch as the above rulings are controlling, it is unnecessary to pass upon the other questions presented by the record.
Judgment affirmed. All the Justices concur, except Beck, P. J., and Atkinson, J., who dissent.
Bell, J., concurs in the judgment.