31999.   REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA *et al. v.* CARROLL *et al.*

DECIDED OCTOBER 27, 1948.   REHEARING DENIED DECEMBER 15, 1948.

*Eugene Cook, Attorney-General, Hamilton Lokey, Margaret Hartson,* for plaintiffs in error.

*Benedict P. Cottone, Harry M. Plotkin, Max Goldman,* as amici curiæ.

*James A. Branch, Thomas B. Branch Jr., Smith, Kilpatrick, Cody, Rogers & McClatchey,* for defendants.

GARDNER, J.   W. E. Carroll, Clarence H. Calhoun, Mrs. Hattie J. Pickard, Mrs. Emma B. Moore, and Sam Pickard, trustee for Sam Pickard Jr., brought suit in Fulton Superior Court against the Regents of the University System of Georgia and Fulton Na-

tional Bank to recover damages caused by an alleged breach of contract by the regents. It was alleged that the radio station W G S T is held and owned by the regents in trust for the Georgia School of Technology, and that the contract sued on was made by the regents with the plaintiffs for and on behalf of said Georgia School of Technology. The petition further alleged: that under the contract sued on it appeared that the regents purchased from the plaintiffs, who were the stockholders of Southern Broadcasting Stations Inc., the capital stock therein owned and held by them, agreeing to pay the plaintiffs therefor "a sum equal to 15 percent of the net billings of Radio Station W G S T, located in Fulton County, Georgia, of the sale of time on the air for any and all types of broadcasting, visual and sound, including any and all revenue which may be derived from such sources as a result of any new developments in the broadcasting field during the period for which the payments under said contract are to be made by said defendant"; that under the agreement such payments were to be made monthly to the Fulton National Bank as agent, beginning April 15, 1943, and to January 6, 1950; that the regents paid this sum, to wit, 15 percent of said net billings of the radio station from April 15, 1943, to and including July, 1945; that no further sum has been paid by the regents under said contract after July, 1945; that under the contract each month since July, 1945, an amount, to wit, said 15 percent of the billings of the station for that month, has become due the plaintiffs by the regents and has not been paid by them; and that there is now a large sum due the plaintiffs under the contract, which amount is unknown to them, and the ascertainment thereof requires an inspection of the books of the radio station and an accounting. The plaintiffs prayed for judgment and an accounting to ascertain the amount due them under the contract. A copy of this contract was attached to the petition, and it was therein provided as set up in the petition. We might here state that on December 4, 1945, the regents filed the third application for a license renewal. At the same time they filed an application for a construction permit. As an exhibit to both applications they filed a statement affirmatively showing that no further effect was being given to the agreements condemned by the Federal Com-

munications Commission. Thereafter, on March 7, 1946, the application was granted and the license renewal was issued. Since the issuance of that license there has been another renewal, on May 1, 1947, which runs until May 1, 1950. The radio station is being currently operated under this license.

In its answer to the said petition, Fulton National Bank admitted that it had been selected as the medium through which the regents were to make said payments to the plaintiffs. The bank had on hand a small sum left over from payments made to it by the regents, which it paid into court.

The regents admitted the allegations of the petition dealing with the subject-matter of the contract, and that no payments had been made thereunder to the plaintiffs since July, 1945. The regents set up in their answer the amount of the 15 percent of the net billings of the radio station from July, 1945, to the date of the filing of the suit, thus obviating the necessity of an accounting to ascertain such sum. They did not contest the fairness of the contract or its validity, except that they set up that, under the ruling of the Federal Communications Commission, the regents could not legally perform said contract and the nonperformance thereof was excused, and the regents were not due the plaintiffs the sums sued for or any other amount under said contract—that is, the regents contended that, under the rulings and findings of the Federal Communications Commission, it had become impossible to carry out the contract sued on, and therefore the regents are excused from a performance thereof. The commission contended that the contract whereby the regents purchased the stock of the Southern Broadcasting Stations Inc. from the plaintiffs, and agreed to pay a certain percent of the net billings of the station for a specified number of months, was contrary to the public interest and inconsistent with the provisions of the Federal Communications Act (47 U. S. C. A., § 151 et seq.). The defense of the regents, therefore, is to the effect that they are excused as a matter of fact and of law from further performance of this contract by reason of the impossibility of their performing the same because of an act of law.

The case was submitted to Honorable Bond Almand, one of the judges of the Superior Court of Fulton County, upon an agreed statement of facts and without the intervention of a jury,

and judgment was rendered for the plaintiffs and against the regents, awarding damages for the 15 percent of the net billings of said radio station accruing from July, 1945, to the date of the present suit, and amounting to $144,968.63 principal and $10,-991.31 as accrued interest. Judge Almand denied the contentions of the defendant as to the legal impossibility of performing the contract sued on by reason of an act of law, and that the regents were therefore excused from performance and ruled that the Federal Communications Commission was without power to take any action which would have the effect of nullifying, changing, or in any wise modifying the duties and obligations of the parties to said contract thereunder, whereby the regents purchased the stock of said broadcasting company, agreeing to pay therefor 15 percent of the net billings of the station or gross income thereof derived from the operation of said radio station; and also ruled that the action of the Federal Communications Commission, in denying a license renewal to the regents for the operation of radio station W G S T, so long as the said contract remained in effect, would not excuse the regents from further performance of such contract on the ground of impossibility of performance by reason of an act of law.

It appears that the first application to the Federal Communications Commission for a renewal of the license for radio station W G S T was made in January, 1940, by the Georgia School of Technology, and that this application was denied. After conducting hearings, the commission found that the radio station, in July, 1923, was acquired by gift from Clark Howell Sr., a trustee of the school; that a contract had been made with Southern Broadcasting Company, predecessor of Southern Broadcasting Stations Inc., to operate the station, the latter to receive the major portion of the income derived from the operation of the station; that thereafter Southern Broadcasting Stations Inc., which had succeeded to the rights of Southern Broadcasting Company, agreed to operate this station under the same contract; that in 1933 the board of trustees of the school was abolished, and the Regents of the University System of Georgia, an agency of the State of Georgia, was established by the State legislature; that an agreement was entered into on June 18, 1936, between the regents, acting for the Georgia School of Technology

and said radio station, and Southern Broadcasting Stations Inc., extending the previous contract and undertaking to continue the operation of the station, and thereunder maintaining, in effect, control of such station and receiving the greater portion of the proceeds derived from the operation of said radio station; and that on March 23, 1943, the application for a renewal of the license was denied, with the right of the applicant to renew same "provided the commission is given assurance that the applicant is prepared to and will in fact assume and discharge the full responsibilities of a licensee." Southern Broadcasting Stations Inc. intervened in the foregoing application and the subsequent proceedings thereunder, and such application and proceedings were designated in the office of said commission as File No. 5903.

Thereafter, in May, 1943, another application for renewal of license was filed by the regents on behalf of said radio station. Neither the broadcasting corporation nor the stockholders or former stockholders thereof intervened in these proceedings, which were known as File No. 6534, but they had actual knowl- edge of the same being filed and of the subsequent proceedings had therein, including the findings of the commission and the order and judgment thereon. Since the findings of the commis- sion on the first application and the terms on which the applicant was given the privilege of making another application for re- newal of the license within a designated period, it appears that the applicant (the regents) had, under the contract of April 15, 1943, and by means thereof, purchased the entire stock of said Southern Broadcasting Stations Inc. This application set out that the regents, or a committee appointed to act for the regents, had supervision, direction, and control of the operation of this radio station. Thereafter, pending this application, the appli- cant filed a petition for the grant of such license without a hear- ing, setting up therein that under the contract of April 15, 1943, the right to control the operation of the radio station was in the regents on behalf of the school, and asking for a renewal of the. license. It was shown that the income of the station had in- creased in 1943 from 1942 and previous years. It was stated therein that "all connection between said station and all former officers, directors, and stockholders of the Southern Broadcasting Stations Inc." had been severed. This petition was denied by

the commission. Thereafter the application for renewal·of the license of Radio Station W G S T was likewise denied, it being found and determined by the commission that the arrangement under the contract of April 15, 1943, would jeopardize the operation of the radio station financially, and the public interest would not be served, and also the assumption by the applicant of a burden, amounting to 15 percent of its gross income resulting not only from the operation of the station but from all new broadcasting developments, would have the effect of restraining the licensee from entering the field of FM and television broadcasting, and such restraint does not appear to be in the public interest, and that such payments represent an effort on the part of the parties to the contract to give further effect to the agreement by which control of the radio station had been illegally transferred to Southern Broadcasting Stations Inc., which would not be in the interest of the public, since it would, in effect, thwart the efforts of the commission to enforce the Communications Act, and that therefore the grant of this application for a renewal of the license would not serve the public interest, convenience, or necessity, and the application was denied, but it was provided in the order that another application could be filed within 90 days, "provided it is affirmatively shown that no further effect is given to" the contract sued on, which the commission had found to be incompatible with the operation of Radio Station W G S T in the public interest. The regents assert that the trial judge erred in rendering judgment for the plaintiffs. Error is assigned on the findings and rulings of the trial court and on the final judgment for the plaintiffs and awarding damages to them for the alleged breach by the regents of said contract of April 15, 1943, on the grounds, among others, that the court erred in holding that the Federal Communications Commission was without power to take any action in the premises which would have the effect of nullifying, changing, or in any wise affecting or modifying the terms and provisions of the contract of April 15, 1943, or of the duties and obligations of the parties thereunder, and also erred in ruling and holding to the effect that the action of the commission, in denying a license renewal to the regents, so long as said April 15, 1943, contract remained in effect and was recognized by the regents as binding on them, should not conclusively afford to the

regents a legal excuse from further performance of this contract by reason of the impossibility on the part of the regents to perform the same and to carry out the provisions thereof by reason of an act of law.

A bill of exceptions was sued out by the regents directly to the Supreme Court, the suit having been brought by the plaintiffs in equity by reason of certain prayers for equitable relief. The Supreme Court transferred the writ of error to the Court of Appeals, holding that, since no prayers for affirmative equitable remedies were made, a court of law was the proper tribunal to determine what rights, if any, the defendants might have under their plea, even though they may call for the application of equitable principles. *Regents of the University System* v. *Carroll*, 203 *Ga.* 292 (46 S. E. 2d, 496).

It is contended that the proper interpretation and correct application of the Federal Communications Act of 1934 (47 U. S. C. A., § 151 et seq.) requires a different judgment from that rendered. Under this statute of Congress, the Federal Communications Commission was created and clothed with the power and authority to enforce the provisions of said law.

The radio-broadcasting licensing system established by this act is a proper exercise by Congress of the power to regulate commerce. National Broadcasting Co. *v.* U. S., 319 U. S. 190 (63 Sup. Ct. 997, 87 L. ed. 1344). The standard provided by this law for the licensing of radio-broadcasting stations is public interest, convenience, or necessity. *Id.* The underlying policy of the communications act and of the Federal Communications Commission is to protect the public interest. The commission is an administrative agency set up by Congress to determine pursuant to this law the rights of the people to have the best possible radio service. See Scripps-Howard Radio *v.* F. C. C., 316 U. S. 4 (62 Sup. Ct. 875, 86 L. ed. 1229); Regents of N. M. College of Agriculture *v.* Albuquerque Broadcasting Co., 158 Fed. 2d, 900; Yankee Network *v.* F. C. C., 107 Fed. 2d, 212; Black River Valley Broadcasts *v.* McNinch, 101 Fed. 2d, 235. But the arbitrary action of the commission in the exercise of its regulatory power is controlled under said act. See Yankee Network *v.* F. C. C., 107 Fed. 2d, 212.

The Federal Communications Commission has power in the

"public interest" under said act to refuse licenses to stations which engage in practices contrary to the public interest, convenience, or necessity. In each case that comes before it, the commission must exercise ultimate judgment whether the grant of a license in the particular instance would serve the public interest, convenience or necessity. See National Broadcasting Co. *v.* U. S., 319 U. S. 190 (supra). A radio-broadcasting station is an instrumentality of interstate commerce. *City of Atlanta* v. *Southern Broadcasting Co.*, 184 *Ga.* 9 (190 S. E. 594). This is so of necessity, as the signals of a weak radio station may carry beyond the limits of the State in which the station may be located. Under the commerce clause of the United States Constitution (par. 3, sec. 8, art. 1), Congress is given power "to regulate Commerce . . among the several States." Code, § 1-125. Radio broadcasting "or communications" are all interstate. This is so, although such broadcasting may be intended for intrastate transmission only. Such communications admit of and require a uniform regulation and control throughout the United States. *City of Atlanta* v. *Southern Broadcasting Co.*, supra.

The Federal Communications Commission has the power and authority in granting a license to a radio station to see that the public interest and convenience are subserved thereby, and an important element of public interest and convenience affecting the issue of a radio-broadcasting license is the ability of the licensee to render the best practicable service to the community reached by his broadcasts. The commission must see to it that all applicants for radio-station licenses have the necessary technical ability to broadcast programs, and that the stations are properly constructed and properly and adequately manned and do not interfere with other stations, and that all licensees are responsible, morally and financially. National Broadcasting Company *v.* U. S., 319 U. S. 190 (supra).

However, the Communications Act was not intended to place matters of a private nature before the Federal Communications Commission. Southern Broadcasting Corp. *v.* Carlson, 187 La. 823 (175 So. 587). In Johnson *v.* Radio Station W O W, 144 Neb. 406 (14 N. W. 2d, 556), 326 U. S. 120 (65 Sup. Ct. 1475, 89 L. ed. 2092), it was held that the right of the Federal Communications Commission to license and require compliance with regula-

tions of the commission does not deprive the State courts of jurisdiction to hear and decide all other property rights in a radio station and the rights of the parties incident thereto. In Southern Broadcasting Corp. *v.* Carlson, supra, the court held that the State court had jurisdiction of a broadcasting company's suit for damages for breach of contract for the management of a radio-broadcasting studio licensed to the defendant, and for injunction to prevent further breach, as against the contention that the dispute should be settled by the Federal Communications Commission under the Communications Act of 1934.

Under the provisions of the communications act as amended, it does not appear to have been the intention of Congress "to regulate the business of the licensee" radio-station operator, and such statute does not, properly construed, make any attempt to do so. "The commission is given no supervisory control of the programs, of business management, or of policy" of the radio-broadcasting stations licensed by such commission or of the operators thereof. Federal Communications Comm. *v.* Sanders Bros., 309 U. S. 470, 475 (60 Sup. Ct. 693, 84 L. ed. 869). While radio broadcasting is truly an interstate proposition, and the operator of a radio-broadcasting station is the operator of a public utility, and thus subject to regulation as any other public utility engaged in interstate transactions would be under the authority given Congress by the commerce clause of the Federal Constitution, its private transactions, not affected with a public interest and not connected with its operation as an interstate public utility, are not subject to regulation and control by the Federal Communications Commission or under the provisions of the Communications Act of 1934, as amended, or any other governmental agency empowered to regulate interstate transactions of a public utility. Matters of private concern, and contracts affecting such rights, which do not have as their subject-matter the rights conferred by a license, or do not substantially affect such rights, are not within the scope of the commission's power to regulate and control in the public interest broadcasting by radio stations and licenses to such stations. Thus, the Federal Communications Commission "has held that contracts for the sale of broadcasting facilities," which "do not involve the transfer of the license itself or rights conferred by it, are matters of private concern and do not require

the commission's consent or approval." See In re M. A. Lee, 5 F. C. C. 364, In re Heart's Radio Inc., 7 F. C. C. 292, and In re City of Atlantic City, 7 F. C. C. 485.

Counsel for the regents have not cited this court to any provision of law giving to the commission the power to regulate the private affairs of the regents to the extent of abrogating an otherwise valid contract made by the regents with the stockholders of Southern Broadcasting Stations Inc., whereby the former purchased the stock of the latter and agreed to pay therefor a certain percent of the net billings of the radio station until 1950. It was not shown that this contract was illegal under the law for any reason. It does not appear that the subject-matter of the contract was affected with such a public interest as to justify the same to be nullified by the order of a governmental agency, charged by act of Congress under the authority of the commerce clause of the Constitution with the power to license radio-broadcasting stations, and to regulate their interstate transactions, namely the broadcasting of radio programs, to the extent of protecting the public interest in the ability of the station to broadcast for the public convenience and necessity. The effect of the contentions of the regents is to give to the commission such power. The regents contend that the refusal of the commission to grant a license renewal to them so long as the regents recognized this contract necessarily and as a matter of law excused them from carrying out the private obligation and contract made with the plaintiffs, whereby the regents purchased the stock in said Southern Broadcasting Stations Inc. from the plaintiff stockholders, and acquired all of the corporation's physical assets as well as its intangible properties and assets, and had agreed to pay therefor an amount of the gross income received by the radio station for a stipulated time, and in the performance of which it had acquired the stock and interest of the plaintiffs in the corporate property, and had surrendered in Fulton Superior Court the charter of the corporation so that same now no longer exists. We can not agree with this contention of the regents, and are of the opinion that the trial court correctly held that the defense of the regents, as set forth in their answer and amendment thereto, did not excuse them from performing this contract, otherwise deemed fair and valid, and awarding damages to the

plaintiffs to the extent of 15 percent of the net billings actually received by the regents from the operation of this radio station from August 1, 1945, to the date of filing this suit.

It is well to note that it appeared without dispute that the regents, being a State governmental agency, have been relieved from the payment of certain taxes, including income taxes, and that this amounts to an increase in the income received by the station from its operation in excess or equal to the 15 percent of the net billings derived by the regents from the operation of the radio station, the agreed purchase-price to be paid for the control of this radio station, and for the corporate stock of said broadcasting corporation and its physical and intangible assets and property. It can not be anticipated that the contract sued on, insofar as it related to the payment of the agreed purchase-price of this stock and of the assets of the corporation, giving to the regents complete control of the radio station and its operation, would so far affect the financial ability of the radio station as to render the station unable to operate in the public interest. The evidence fails to show that the contract would affect the public interest in reference to the broadcasts of this station.

The plaintiffs are not collaterally attacking the order and decision of the Federal Communications Commission by petition in Fulton Superior Court. They are simply seeking to enforce a private agreement by suit for a breach thereof. The defendants set up the order and decision of said commission as excusing them from performance of this contract, and contend that such order and decision nullified said contract, and that the plaintiffs are bound by such order and decision. With this contention we do not agree. To give to the Communications Act of 1934 (47 U. S. C. A., § 151 et seq.), the construction contended for by the regents, by holding that the commission had the right and power under said act to abrogate a private contract between a radio-station operator and the stockholders of a defunct corporation whereby the radio-station operator acquired all the corporate assets, physical and intangible, and all stock held by the stockholders, agreeing to pay therefor an amount of the proceeds derived from the operation of the radio station for a stipulated time —it not appearing that the payment of such purchase-price would render the radio station unable to operate in the public interest—

would ascribe to Congress an unconstitutional attempt to regulate private business and contracts, not affected with a public interest, and not necessary for the public interest, convenience, or necessity.

This decision is not intended to be an adjudication that the regents would be liable to the plaintiff stockholders under the contract of April 15, 1943, for the payment of the purchase-money for said stock, in the event that the regents are definitely refused a license by the commission because of a recognition by the regents of the contract now sued on except to the extent of paying over to the plaintiffs 15 percent of the net billings of the radio station during the months it has been and is operated under license from the commission, temporary or permanent, and derives an income from its operation. What we hold, and nothing more, is that, under the pleadings and agreed facts, the trial judge correctly found that there had been an unexcused breach by the regents of the contract of April 15, 1943, and that the regents were liable to the plaintiffs under said contract for such breach for the 15 percent of the net billings received from the operation of said radio station from August 1, 1945, to the filing of this suit, or as found by the trial court, for damages of $144,968.63 principal, and $10,991.31 accrued interest, being 15 percent of the net billings during such time.

Taking the above view, the other contentions of the regents are necessarily to be determined adversely to the regents and are controlled thereby, and the trial judge's ruling and judgment excepted to were not erroneous for any of the reasons assigned.

*Judgment affirmed. Sutton, C. J., and MacIntyre, P. J., concur.*