BEARD, COLLECTOR *v.* VINSONHALER.

4-8881                                                                221 S. W. 2d 3

Opinion delivered May 23, 1949.

Rehearing denied June 27, 1949.

*T. J. Gentry,* for appellant.

*Bailey & Warren* and *Bruce T. Bullion,* for appellees.

GEORGE ROSE SMITH, J. This case involves the validity of occupation taxes levied by Ordinance No. 7573 of the City of Little Rock. The appellees, a partnership owning radio station KGHI and a corporation owning station KARK, brought suit to enjoin the City Collector from enforcing the ordinance, upon the theory that the taxes are an unconstitutional burden on interstate commerce. The chancellor sustained this contention. A second contention, that the ordinance infringes the guaranty of free speech, has been abandoned.

The ordinance levies an annual occupation tax of $250 upon persons who either (*a*) carry on the business of producing or generating electro-magnetic waves for the purpose of broadcasting by radio transmission or (*b*) engage in the business of intrastate radio broadcasting. The law recites that it shall not apply to that portion of the business that may be in interstate or foreign commerce, or to business done for the government of the United States. There is levied also an annual tax of $50 upon the business of soliciting radio advertising within the city, with the same exemption of interstate, foreign and Government business.

The appellees' basic argument is that all radio broadcasting is essentially interstate commerce. The proof shows that radio waves continue to travel indefinitely, that even a comparatively weak transmitter sends its signals far beyond the borders of its own State—though with a natural diminution in strength as the impulses are diffused over a widening circle. Station KARK has been heard in every State and in countries as distant as Australia and New Zealand. Of course such facts as these underlie the various decisions holding that radio broadcasting is at least partly interstate commerce and that in its interstate aspects it may not be burdened by State privilege taxes. See, for example, *Fisher's Blend Station, Inc.,* v. *State Tax Com'n,* 297 U. S. 650, 56 S. Ct. 608, 80 L. Ed. 956, in which the court struck down a privilege tax upon gross receipts from interstate broadcasting.

The question here, however, is whether radio broadcasting also involves intrastate activity which may be subjected to local taxation. It is shown that the appellees broadcast not only national network programs, originating elsewhere and relayed to Little Rock by telephone wire, but also local programs arising in the appellees' studios. About a fourth of the appellees' income is derived from local advertisers; the rest comes from the sponsors of programs originating outside the State.

We think the appellees' business is intrastate as well as interstate. Suppose, for instance, that a candidate for mayor broadcasts an address to the city's electors or a small bakery advertises a sale of its bread. Not only do such programs originate in Little Rock, but both their intended appeal and actual effect are wholly local. Only citizens of Little Rock can vote in her elections; only neighborhood customers will act on the invitation to buy a loaf of bread. It is immaterial equally to the appellees and to their advertisers that a handful of nonresidents may listen momentarily to the broadcast before turning to a program of greater interest. Such transient eavesdropping is merely an adventitious consequence of the uncontrollable carrying power of radio waves. This

ordinance taxes only the local transaction, expressly exempting these fortuitous interstate aspects.

In this respect the opinion in *Postal Tel. Cable Co.* v. *Charleston,* 153 U. S. 692, 14 S. Ct. 1094, 38 L. Ed. 871, is enlightening. The city levied an annual privilege tax of $500 upon telegraph companies "for business done exclusively within the city of Charleston, and not including any business done to or from points without the State." The company argued that the tax was really upon its entire business, but the court answered this contention by pointing to the language of the ordinance. It was also urged that great injury might result to the company if various cities were allowed to tax it, but the court replied: "But this is a hardship, if such exists, that it is not within our province to redress. If business done wholly within a State is within the taxing power of the State, the courts of the United States cannot review or correct the action of the State in the exercise of that power."

In the latter respect this case is even stronger, for the possibility of multiple taxes does not exist. Little Rock alone is in a position to exact a license fee for the intrastate business done by these radio stations. This consideration was stressed in *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 58 S. Ct. 546, 82 L. Ed. 823, 115 A. L. R. 944, wherein the court sustained a tax upon gross receipts from a trade journal that carried out-of-state advertising and went to many nonresident subscribers. From the opinion: "But there is an added reason why we think the tax is not subject to the objection which has been leveled at taxes laid upon gross receipts derived from interstate communication or transportation of goods. So far as the value contributed to appellants' New Mexico business by circulation of the magazine interstate is taxed, it cannot again be taxed elsewhere any more than the value of railroad property taxed locally. The tax is not one which in form or substance can be repeated by other states in such manner as to lay an added burden on the interstate distribution of the magazine."

Nevertheless, appellees insist that the interstate and intrastate elements of broadcasting are inseparable, so that a tax upon one is inevitably a tax upon the other. As a physical matter it is true that the electric waves cannot be divided into separate classes, but that fact is not conclusive. In *Pacific Tel. & Tel. Co.* v. *Tax Com'n of Washington,* 297 U. S. 403, 56 S. Ct. 522, 80 L. Ed. 760, 105 A. L. R. 1, the court summarized its earlier cases by saying: "No decision of this Court lends support to the proposition that an occupation tax upon local business, otherwise valid, must be held void merely because the local and interstate branches are for some reason inseparable."

Furthermore, it is only the emanations of the radio waves that are inseparable. Those are not what this ordinance endeavors to tax; instead, the tax is laid upon a course of conduct that constitutes engaging in intrastate business. A substantial part of the appellees' programs originate locally and are of purely local interest. To that extent the appellees are engaged in a local enterprise readily separable from their interstate activity. Should they confine their broadcasts to programs brought in from other states there might be force to their suggestion that interstate commerce is being taxed. But as long as they conduct an essentially intrastate business as well, we see no reason why they should not bear their share of the cost of municipal advantages admittedly received. It is shown that daily newspapers pay an annual tax of $1,000, although some of their papers go beyond the State boundaries. The telephone company's tax is $45,000, though its business is interstate as well as intrastate. By comparison the appellees' tax is moderate in amount. It is not even suggested that the sum exceeds the profits derived from local business, so that interstate receipts are to some extent affected. Whether such a showing would invalidate the tax is at least doubtful, in view of the language in *Postal Tel.-Cable Co.* v. *Richmond,* 249 U. S. 252, 39 S. Ct. 265, 63 L. Ed. 590, and *Pacific Tel. & Tel. Co.* v. *Tax Com'n, supra.*

As an alternative the ordinance taxes the generation of electro-magnetic waves within the city. To the extent that this is a step in the process of broadcasting the same considerations that we have discussed are applicable. Moreover, the production of these waves is even more local in its nature. It is shown that broadcasting involves a number of distinct processes. Initially, the impact of sound waves upon magnets within the microphone so affects an alternating electric current as to create electro-magnetic waves. Those who are engaged in the production of such waves are subjected to the tax. The current is next amplified and sent by wire from the studio to the transmitting station. According to one of appellees' witnesses, at that point "it is not radio." At the transmission station the electric impulses are again amplified, modulated, and sent forth into the atmosphere, the process then becoming radio. When the impulses are picked up by a receiving set the process is reversed and they are changed back to sound waves.

The tax may be likened to that upheld in *Utah Power & Light Co.* v. *Pfost,* 286 U. S. 165, 52 S. Ct. 548, 76 L. Ed. 1038. There the excise was levied in Idaho upon the generation of electricity that was immediately transmitted to Utah. No energy was kept in storage, so that when a Utah consumer turned a switch to use electricity the effect was to set in operation the generators in Idaho, which at once transformed water power into the required electrical energy. Even though generation and transmission were elements of a continuous process, the court held that they were distinct operations. The tax upon the generation of the current was accordingly upheld, in spite of its instantaneous transmission into interstate commerce.

In the case of *Fisher's Blend Station, Inc.,* v. *State Tax Com'n, supra,* strongly urged by the appellees, the court was careful not to say that a tax upon the generation of radio impulses would be invalid. This point was reserved by the following language in the opinion: "Whether the state could tax the generation of such energy, or other local activity of appellant, as distinguished from the gross income derived from its busi-

ness, it is unnecessary to decide." In this case the city is venturing only into the area kept open by that decision.

What we have said disposes also of the attack upon the tax levied upon the business of soliciting radio advertising. This activity is even more distantly removed from the interstate aspects of broadcasting, and thus its liability to local taxation is even more clearly apparent.

Reversed and dismissed.

HOLT, J., dissenting. I respectfully dissent.

The City Ordinance involved here contains nine sections and provides, in effect: (1) The business of (a) generating electro-magnetic waves for radio broadcasting purposes and/or (b) the business of intrastate radio broadcasting in Little Rock is a privilege and every person, etc., engaged therein shall pay to the City Collector an annual license fee of $250 beginning on or before April 30, 1948;

(2) That the business of soliciting intrastate radio advertising in Little Rock is a privilege and every person, etc., engaged therein shall pay to the City Collector an annual license fee of $50 beginning on or before April 30, 1948;

(3) Specifically declares the Council's intent not to levy the tax upon interstate radio broadcasting and/or advertising solicitation; and

(4) Provides a penalty of from $15 to $100 per day for each day's failure to pay said tax.

The trial court found that this Ordinance constituted a burden on interstate commerce and was therefore unconstitutional.

Appellees clearly and concisely state the questions presented in this language: "1. Is the business of producing electro-magnetic waves for broadcasting purposes such a separable incident of radio broadcasting as to permit a municipal government to levy a privilege tax thereon, or is such a tax in violation of the Commerce Clause of the United States Constitution?

"2. May a municipal government levy a privilege tax upon those persons, etc., who solicit radio advertising within the corporate limits of the city, or is the solicitation of radio advertising 'soliciting goods intended for interstate commerce' and hence within the purview of the Commerce Clause of the United States Constitution?"

The two broadcasting stations involved here—(as are all broadcasting stations throughout the Nation)—are licensed, controlled and regulated by the Federal Communications Commission.

Radio broadcasting, by its very nature, transcends State lines and is national in its scope. No method has as yet been devised by which the sound waves, which are generated and immediately transmitted through the ether, may be localized or stopped at State boundaries. It is impossible to separate intrastate from interstate business since all broadcasting is interstate in scope. In this respect, radio broadcasting is entirely different from such businesses as that of telephone, telegraph and electric power companies, for obviously, you can separate, for tax purposes, gross receipts realized by telephone, telegraph or power companies done beyond the State's borders, or interstate from their intrastate business. In other words, these three latter companies could engage solely in intrastate business if they so desired, without even crossing State boundaries, but not so with radio broadcasting.

The generation of electro-magnetic waves and the transmission of those waves is, according to the evidence, practically a simultaneous operation, and neither can be singled out as a separate and distinct part and subjected to local taxation.

In the case of *Station WBT* v. *Poulnot,* (1931), 46 F. 2d 671, wherein the State of South Carolina enacted a law imposing an annual license tax upon the privilege of owning or operating a radio receiving set, the court in holding the law unconstitutional as a burden upon interstate commerce, said: "The only question remaining is whether the state has the right to lay a tax upon these

instruments of interstate commerce. Under the numerous decisions of the Supreme Court there can be only one answer. Those decisions hold that Congress has the power to regulate interstate commerce; that that power is necessarily exclusive whenever the subjects are national in their character or admit only of one uniform system or plan of regulation; and that where the power of Congress to regulate is exclusive, the failure to regulate indicates the will that it shall be left free from any restrictions or impositions; and any regulation of the subject by a state, except in matters of local concern, is repugnant to such freedom; that no state can compel a party, individual, or corporation to pay for the privilege of engaging in interstate commerce, and that a state has no power to lay any burden in any form, by taxation or otherwise, upon interstate commerce or its instrumentalities. * * *

"There can be no doubt that communications by radio constitute interstate commerce. It has been so held by numerous courts, and the decisions of the Supreme Court of the United States defining interstate commerce lead to that conclusion. Gibbons v. Ogden, 9 Wheat. 1, 189, 6 L. Ed. 23; Pensacola Tel. Co. v. Western Union Telegraph Co., 96 U. S. 1, 24 L. Ed. 708; Blumenstock Bros. Adv. Agency v. Curtis Pub. Co., 252 U. S. 436, 40 S. Ct. 385, 64 L. Ed. 649; Western Union Telegraph Co. v. Speight, 254 U. S. 17, 41 S. Ct. 11, 65 L. Ed. 104; Whitehurst v. Grimes (D. C.) 21 F. 2d 787; Gen. Elect. Co. v. Fed. Radio Comm., 58 App. D. C. 386, 31 F. 2d 630; U. S. v. American Bond & Mortgage Co., (D. C.), 31 F. 2d 448; Tech. Radio Lab. v. Fed. Radio Comm., 59 App. D. C. 125, 36 F. 2d 111, 66 A. L. R. 1355; City of N. Y. v. Fed. Radio Comm., 59 App. D. C. 129, 36 F. 2d 115."

"No state lines divide the radio waves, and national regulation is not only appropriate but essential to the efficient use of radio facilities." (*Federal Radio Comm.* v. *Nelson Bros.*, 289 U. S. 266, 53 S. Ct. 627, 77 L. Ed. 1166.)

In Whitehurst v. Grimes (1927), 21 F. 2d 787, wherein a Kentucky city passed an ordinance requiring all

persons operating a radio broadcasting station to pay a license tax, the court said: ''The tax provided is not on the property of the radio operator, but on the business of radio broadcasting. Radio communications are all interstate. This is so though they may be intended only for intrastate transmisison, and interstate transmission of such communications may be seriously affected by communications intended only for intrastate transmission. Such communications admit of and require a uniform system of regulation and control throughout the United States, and Congress has covered the field by appropriate legislation. It follows that the ordinance is void as a regulation of interstate commerce.''

I think, however, that the Supreme Court of the United States, in the case of *Fisher's Blend Station* v. *Tax Commission*, (1936), 297 U. S. 650, 56 S. Ct. 608, 80 L. Ed. 956, has definitely settled all issues presented here in favor of the appellees and the case should be affirmed. This latter case came to the U. S. Supreme Court from the State of Washington. The Washington Supreme Court had held a State statute levying an occupation tax on the gross receipts from broadcasting within the State to be constitutional. The U. S. Supreme Court reversed the Washington Court and held the tax to be an unconstitutional burden on interstate commerce. I quote rather extensively from the opinion written by the late Justice Stone: ''Appellant is thus engaged in the business of transmitting advertising programs from its stations in Washington to those persons in other states who 'listen in' through the use of receiving sets. In all essentials its procedure does not differ from that employed in sending telegraph or telephone messages across state lines, which is interstate commerce. (Citing many cases.) In each, transmission is effected by means of energy manifestations produced at the point of reception in one state which are generated and controlled at the sending point in another. Whether the transmission is effected by the aid of wires, or through a perhaps less well understood medium, 'the ether,' is immaterial, in the light of those practical considerations which have dictated the conclusion that the transmis-

sion of information interstate is a form of 'intercourse,' which is commerce. See Gibbons v. Ogden, 9 Wheat. 1, 189, 6 L. Ed. 23, 68.

"Similarly, we perceive no basis for the distinction urged by appellee, that appellant does not own or control the receiving mechanisms. The communications broadcasted are no less complete and effective, nor any the less effected by appellant, because it does not own or command the apparatus by which they are received. The essential purpose and indispensable effect of all broadcasting is the transmission of intelligence from the broadcasting station to distant listeners. It is that for which the customer pays. By its very nature broadcasting transcends state lines and is national in its scope and importance—characteristics which bring it within the purpose and protection, and subject it to the control, of the commerce clause. See Federal Radio Commission v. Nelson Bros. Bond & Mortg. Co., 289 U. S. 266, 53 S. Ct. 627, 77 L. Ed. 1166, 1175, 89 A. L. R. 406."

The majority opinion appears to lean rather heavily upon the following language (which was mere dicta) used in the Fisher's Blend case: "Whether the state could tax the generation of such energy, or other local activity of appellant, * * * it is unnecessary to decide. See Atlanta v. Oglethorpe University, 178 Ga. 379, 173 S. E. 110."

It is interesting to note that the Georgia case cited in support, of the gratuitous language used, has been twice overruled since the Fisher's Blend decision. See *Atlanta* v. *Southern Broadcasting Co.* (Ga.-1937), 184 Ga. 9; 190 S. E. 594, and *Atlanta* v. *Atlanta Journal Co.* (Ga. 1938), 186 Ga. 734, 198 S. E. 788.

We also must bear in mind the well established rule that where there is any doubt as to the validity of a tax, such doubt must be resolved in favor of the taxpayer. *City of Little Rock* v. *Ark. Corp. Comm.*, 209 Ark. 18, 189 S. W. 2d 382, and *McFeeley* v. *Comm.*, 296 U. S. 102, 56 S. Ct. 54, 80 L. Ed. 83, 101 A. L. R. 304.

In view of the authorities above cited, it seems to me that there could be no doubt but that the taxes imposed here are unconstitutional.

The decree should be affirmed.