NICHOLSON, COPELAND AND BEAN *v.* CITY OF FORREST CITY.

4592-4593-3454                                    228 S. W. 2d 53

Opinion delivered March 6, 1950.

*Joe Van Derveer* and *Norton & Norton,* for appellant.

*T. J. Gentry, Amicus Curiae.*

LEFLAR, J. Three separate cases are consolidated on this appeal. The three appellants, defendants below, were each convicted and fined ten dollars and costs in the Police Court of Forrest City for violation of the occupation tax ordinance of that city. On appeal to Circuit Court the Judge, trying the cases without a jury, again found each defendant guilty and reimposed the same sentence. The defendants now appeal to this Court.

Ordinance No. 603 of Forrest City levies certain "annual privilege licenses" as follows:

"Photographers: $11.00 per year.

"Photograph salesman which means each person engaged in selling photographs, photograph coupons or certificates or any other medium of exchange for photographs. $25.00 per year.

"All other persons engaged in soliciting the sale of additional photographs, known as 'Proof Passers': $15.00 per year."

The ordinance further provided for a criminal fine of not more than $50.00 nor less than $10.00 for each day during which any person should violate its provisions. The ordinance was made a part of the general occupation tax law of the city, though it was added thereto by separate and subsequent enactment.

The three defendants here were respectively a photographer or cameraman, a photograph salesman, and a "proof passer," all employed by Olan Mills, Inc., a Tennessee corporation engaged in the photography business with its principal place of business in Chattanooga, Tenn. Olan Mills, Inc., has secured authority as a foreign corporation to do business in Arkansas, and is doing business here and in some nine other states.

Its method of doing business, in which the three defendants in this case participated, is similar to that of the old-style "drummer," except that for efficiency's sake its employees work in teams or squads.

In a team there will be one or more salesmen (like defendant Copeland) who canvass or solicit orders in a municipality for photographs. All orders are accepted for future delivery, to be manufactured, finished and processed in Chattanooga, Tenn. When the order is taken the customer pays fifty cents down and is notified where and when to appear for his "sitting" or "exposure", this usually being in a room rented at a local hotel. At the time set, a cameraman (like defendant Nicholson) takes the "exposure" and collects an additional fifty cents deposit. The exposed negatives are then mailed to the company's plant in Chattanooga where they are developed and proofs are made. These proofs are then mailed to an employee called a "proof passer" (like defendant Bean), the customer being at the same time notified by mail of the date on which the "proof passer" will show the proofs to him. The customer on that date selects from the proofs the picture he wants, one copy of which he is to receive in return for the $1.00 previously paid by him. It is the "proof passer's" job to sell additional copies to the customer. Orders taken are mailed to Chattanooga where the finished photographs are then manufactured and mailed directly to the customer.

The acts done by defendants Copeland, Nicholson and Bean at Forrest City were the acts just described. Their acts admittedly fall within the scope of Forrest City's Ordinance No. 603.

The validity of the ordinance as applied to their acts is attacked under the commerce clause (Art. 1, § 8, par. 3) of the Constitution of the United States. It is agreed that "not all burdens upon interstate commerce, but only undue or discriminatory ones, are forbidden" by this clause, but defendants contend that the ordinance as applied to them does impose undue and discriminatory burdens upon the processes of interstate commerce.

The case of *Nippert* v. *City of Richmond*, 327 U. S. 416, 66 S. Ct. 586, 90 L. Ed. 760, 162 A. L. R. 844, decided by the United States Supreme Court in 1946, appears to be controlling here. That case held invalid a $50 annual license tax levied by ordinance of the City of Richmond, Va., on the privilege of engaging in business as a solicitor, as applied to a person soliciting orders for women's dresses to be shipped to local buyers by an out-of-state seller. The defendant had without paying the license tax solicited orders in Richmond for five days for a $2.98 garment and had transmitted orders thus taken to a Washington, D. C., manufacturer who filled the orders by mail. A conviction for violation of the Richmond ordinance was reversed and set aside.

In the *Nippert* case, as in the present cases, the ordinance made no distinction between out-of-state solicitors, or solicitors for out-of-state sellers, and local solicitors for domestic sellers. On its face the ordinance and the tax operated equally upon solicitors for interstate sales and solicitors for intrastate sales. It levied a $50 annual tax on each. The City of Richmond took the view that the ordinance was non-discriminatory as between interstate and intrastate commerce, therefore imposed no improper burden on interstate commerce, and came within the rule that interstate commerce may be made to "pay its way" in the local tax field. *McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876. The Supreme Court pointed out, however, that the tax sustained in the *Berwind-White* case was a sales tax on sales completed in New York, levied on a percentage basis, therefore burdening each interstate sale thus completed just as much as a corresponding local sale was burdened, and no more. Not only was the tax non-discriminatory on its face; it was also non-discriminatory in its practical effect as well. Contrariwise, the Richmond tax, superficially the same on all solicitation whether for interstate or intrastate sales, in average practice imposed much the heavier burden on salesmen for extrastate sellers. "So far as appears a single act of unlicensed solicitation would bring the sanction into play. The tax

thus inherently bore no relation to the volume of business done or of returns from it." (327 U. S., at 427). If such a tax might be levied by one town, it might be levied by ten towns, or twenty, or all the towns in a state, or all the towns in all the states to which a seller's commerce might extend. "A day here, a day there, five days now and five days . . . several months later, with a flat license tax annually imposed [in each town] lacking any proportion to the number or length of visits or the volume of business or return, can only mean the stoppage of a large amount of commerce which would be carried on either in the absence of the tax or under the incidence of one taking account of these variations. . . . Not the tax in a vacuum of words, but its practical consequences for the doing of interstate commerce in applications to concrete facts are our concern." (327 U. S., at 430, 431). The possibility that a solicitor of interstate sales might stay in one town for many months, or for the whole year, and thus actually be not burdened more by the tax than would a local full-time salesman, was deemed not enough to validate the ordinance; the known nature of much interstate selling by itinerant solicitors negatives such permanence in location, and the enactment was not to be saved by the mere possibility of exceptional non-discriminatory cases under it.[1] The established local solicitor of intrastate business whose normal situation enables him to work in one community for an entire year with only a single privilege tax payment is by the enactment given a tremendous tax advantage over the average itinerant in his less localized solicitations for interstate business.

It is suggested that, though the Forrest City tax be bad as to those who solicit orders for photographs—the salesmen and the "proof passers"—it may yet be

[1] The decision in the *Nippert* case was essentially a reaffirmation of a long line of decisions, the so-called "drummer cases," holding similar state and municipal enactments to be void under the commerce clause. The first of this line of cases was *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694, and it was followed often, as in *Crenshaw* v. *Arkansas*, 227 U. S. 289; *Rogers* v. *Arkansas*, 227 U. S. 401, 33 S. Ct. 398, 57 L. Ed. 569; and *Real Silk Hosiery Mills* v. *Portland*, 268 U. S. 325, 45 S. Ct. 525, 69 L. Ed. 982. Citations are collected in *McGoldrick* v. *Berwind-White Co.*, 309 U. S. 33, 56 at note 11, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876.

sustained as to cameramen. This is on the idea that the cameraman engages in a series of tangibly physical local acts, acts subject to local police regulation, acts that do not necessarily in their nature belong to the chain of interstate commerce, acts that are separate and individually identifiable apart from the commerce that is interstate. All this is true, but it is equally true of the acts of a salesman; every statement just made about what a cameraman does can as well be made about what a solicitor does. Both are commerce; if the commerce of which they are a part be interstate, then both are a part of the interstate commerce. Whether a tax levied on one act or the other is an improper local interference with interstate commerce depends not so much upon what element in the commerce is taxed as upon how the tax affects the whole of the commerce. ''It has not yet been decided that every state tax bearing upon or affecting commerce becomes valid, if only some conceivably or conveniently separable 'local incident' may be found and made the focus of the tax.'' (327 U. S., at 423.) If an annual privilege tax on cameramen will have less detrimental effect than will a similar tax on salesmen upon the interstate commerce in which all the defendants together are engaged, then the suggestion may have validity.

It is hard to see how its detrimental effect will be any less. The cameraman's activity is the central feature, the key occurrence, in the interstate transaction which the contract between the customer and Olan Mills, Inc., calls for. If a cameraman working for Olan Mills, Inc., is required to pay $11 for the privilege of doing five days work—or for the privilege of doing ten or twenty days work, assuming that the same cameraman might return to the same town two or three times in one year—he is subjected to a tremendous tax disadvantage as compared with the local cameraman who works all year long in one place under a single $11 privilege tax payment. This disadvantage has as much relation to interstate commerce in photographs as does the same disadvantage imposed on salesmen who solicit orders

814

for the photographs which the cameraman takes.[2] Both disadvantages enable a local intrastate photographic business to operate more cheaply than an interstate business like Olan Mills, Inc., as far as taxes are concerned. In similar cases from other states it has even been asserted that this may have been the motive for such enactments.

It has also been suggested that the amounts of the annual burdens imposed by the Forrest City ordinance— $25, $15, and $11—are sufficiently less than the $50 annual burden imposed by the Richmond ordinance to enable us to distinguish the cases, or that at least the $11 annual burden is sufficiently less. If it be recognized that a cameraman who works a week in each of fifty towns during a year might have to pay fifty times $11 for the privilege of doing his year's work, while an intrastate photographer who spends the whole year in one town would pay but one $11 tax for the same privilege, the burden ceases to appear small. The possibility of having to pay the tax in fifteen towns, or in eight or ten, involves a burden that cannot be called negligible. Even the fact of paying it in one town in return for the privilege of doing five days work, or perhaps two days work, is a substantial burden when compared with the local photographer's privilege of working 365 days on payment of the same amount. Actually, several United States Supreme Court cases have invalidated discriminatory privilege taxes which were fixed in comparably low amounts. Fair examples include *Caldwell v. North Carolina,* 187 U. S. 622, 23 S. Ct. 229, 47 L. Ed. 336 ($10 yearly license tax on selling or delivering photographs or frames) ; *Brennan* v. *City of Titusville,* 153 U. S. 289, 14 S. Ct. 829, 38 L. Ed. 719, ($1.50 for one day, $5 for one week, $10 for three months, $25 for one year license tax on non-local sellers of pictures) ; and *Asher v. Texas,* 128 U. S. 129, 9 S. Ct. 1, 32 L. Ed. 368, ($35

[2] Discriminatory state taxation of local acts other than selling as such has been held violative of the commerce clause when the act taxed is an inseparable part of interstate commerce. See *Caldwell* v. *North Carolina,* 187 U. S. 622 (framing and delivery of photographs after interstate sales) ; *Rogers* v. *Arkansas,* 227 U. S. 401 (delivery of buggies in state after interstate sales) ; *Best & Co.* v. *Maxwell,* 311 U. S. 454 (display of samples in a hotel room).

annual occupation tax on drummers.) The evil of ·such taxes lies not so much in their amount as in their discriminatory character. If in its practical effect a tax even smaller than $11 a year were discriminatory against interstate commerce it would be unconstitutional.

As was pointed out in the *Nippert* case this conclusion clearly does not mean that there can be no valid taxes levied on acts or things which are in the course of interstate commerce. "There is no lack of power in the state ·or its municipalities to see that interstate commerce bears with local trade its fair share of the cost of local government, more especially in view of recent trends in this field." (327 U. S., at 433). Under such cases as *McGoldrick* v. *Berwind-White Co., supra; Western Livestock* v. *Bureau of Revenue,* 303 U. S. 250, 58 S. Ct. 546, 82 L. Ed. 823, 115 A. L. R. 944; and *Utah Power & Light Co.* v. *Pfost,* 286 U. S. 165, 52 S. Ct. 548, 76 L. Ed. 1038, it is permissible today to levy local taxes on activities connected with interstate commerce which were once generally thought to be immune from state taxation. See, also *Beard, Collector* v. *Vinsonhaler,* 215 Ark. 389, 221 S. W. 2d 3; *cert.* denied, 338 U. S. 863, 896, 70 S. Ct. 146. There is no indication as yet, however, that the immunity will be soon withdrawn as far as levies such as those sought to be imposed by the Forrest City ordinance are concerned. *Nippert* v. *City of Richmond, supra.* If privilege taxes are to be levied on acts which are part of the processes of interstate commerce, they will have to be so calculated that in their practical effect they will not substantially discriminate in favor of comparable activities in intrastate commerce which compete economically with the interstate activities that are taxed. The law does not require that exact equality in treatment be achieved, but it does prohibit clear inequality.

The judgments are reversed and the cases are dismissed.

SMITH GRIFFIN, Chief Justice, and McFADDIN, J., dissent in part as· to No. 4592.

MILLWEE, J., not participating.

ED. F. McFADDIN, J. (Dissenting). I dissent from so much of the majority holding as concerns the photographer Nicholson; because I am of the opinion that as to him the judgment should be affirmed for either of two reasons:

(1)—His work was localized to such an extent that it was removed from interstate commerce; and

(2)—Even if his work was in interstate commerce, nevertheless, the tax of $11 per year was not "an undue burden on interstate commerce."

To elucidate:

(1)—Nicholson transported his picture-taking equipment into Forrest City, rented quarters for a studio, required patrons to come to the studio, and there posed them for their pictures. These acts are far more than those of a solicitor or a proof-passer. *Nippert* v. *Richmond** is the authority for the holding that the solicitor, Copeland, and the proof-passer, Bean, were engaged in interstate commerce; the so-called "Drummer Cases," mentioned in the footnote to the majority opinion, also support the conclusion that the solicitor and proof-passer were engaged in interstate commerce. But neither in the Nippert case* nor in any of the "Drummer Cases" do I find a situation comparable to that of the photographer, Nicholson, in the case at bar. The majority, in holding that he was engaged in interstate commerce, is going further than the Supreme Court of the United States went in the Nippert case.* It is my opinion that the photographer's work was localized to such an extent that it was removed from interstate commerce; and for this reason his conviction should be affirmed.

(2)—But, even if the photographer, Nicholson, was in interstate commerce in performing all of the matters mentioned, still I am not willing to say that a tax of $11 per year, required to be paid by him, would be "an undue burden on interstate commerce"; and $11 per year is the tax involved in the case at bar. In *Nippert* v. *Richmond** the tax was $50 per year. Somewhere, be-

* 327 U. S. 416, 90 L. Ed. 760, 66 S. Ct. 586, 162 A. L. R. 844.

tween fifty dollars and zero, there is an amount that ceases to be ''an undue burden on interstate commerce''; and $11 seems to me as such an amount. *Nippert* v. *Richmond** recognizes that interstate commerce must pay its way. Here is the language:

''As has been so often stated but nevertheless seems to require constant repetition, not all burdens upon commerce, but only undue or discriminatory ones are forbidden. . . .

''There is no lack of power in the State or its municipalities to see that interstate commerce bears with local trade its fair share of the cost of local government, more especially in view of recent trends in this field, *McGoldrick* v. *Berwind-White Coal Min. Co.*, 309 U. S. 33, 84 L. Ed. 565, 60 S. Ct. 388, 128 A. L. R. 876, *supra.''*

Until the United States Supreme Court holds that a municipality cannot collect any occupation tax except one based on income—and *Nippert* v. *Richmond** does not so hold—then I am unwilling to deny municipalities the right to collect a mere tax of $11 per year from transient photographers, when (a) local photographers pay the same amount, and (b) there is no evidence that a tax based on income would be less than the $11 per annum.

For these reasons I respectfully dissent from so much of the majority opinion as reverses the judgment of conviction against the photographer, Nicholson.