STATE v. MRS. JESSIE MOBLEY.

(Filed 17 July, 1951.)

**1. Constitutional Law § 29—**

The solicitation of orders by an agent in this State is an integral part of interstate commerce when the filling of the orders and the delivery of the goods require their transportation to this State from another state, especially where the orders are subject to acceptance or rejection by the out of state principal.

**2. Same—**

Where agents solicited business in this State, taking a dollar deposit entitling the customer to one unmounted photograph subject to the right of the photographer to accept or reject orders, and the pictures are taken here but the processing of the pictures is done at the photographers out of state plant, the proofs returned here and delivered to the customer by another agent who takes any orders for additional photographs, which are mailed to the customer direct from the out of state plant, *held:* The solicitation of such orders is an integral part of interstate commerce.

**3. Constitutional Law §§ 11, 31—**

The constitutional inhibition on the part of the several states to regulate interstate commerce is subject to exception where the regulations are in the exercise of the police power reserved to the several states, but in order to come within the exception it is necessary that the exercise of the police power be real and *bona fide* and accomplished in some plain, appreciable and appropriate manner an objective within the police power, and that its bearing upon interstate commerce be incidental thereto. Art. I, Sec. 8, clause 3, of the Constitution of the United States.

**4. Constitutional Law § 31—**

The fact that a statute applies alike to all the people whether within or without the boundaries of the State is not determinative of whether it places an undue or discriminatory burden upon interstate commerce, but such statute may be discriminatory in applying to only one branch of a business or in imposing sanctions having no relationship to the volume of business transacted.

**5. Same—Statute requiring bond of photographers soliciting business through agents held void as to interstate business as discriminatory burden on interstate commerce.**

A statute requiring photographers soliciting business by agents and issuing any coupon redeemable in whole or in part for photographic products, to file a bond with the clerk of the Superior Court in each and every county in which their business is to be conducted, which bond should be conditioned upon the discharge by the principal of all contracts, representations and other obligations made by the principal or any solicitor of such principal, *is held* unconstitutional and void in regard to interstate business as discriminatory in applying only to the branch of the business operating through canvassers, solicitors or salesmen, in having no reason-

able relationship between the amount of business done and the sanctions imposed, and in making the bond liable for all representations and other obligations of the soliciting agents beyond the settled rules of law governing liability upon the doctrine of *respondeat superior*. Art. 12, Chap. 66, of the General Statutes.

**6. Same: Constitutional Law § 11—**

A statute requiring the posting of bond in each and every county in which a photographer does business in this State through canvassers, solicitors or agents who issue coupons for photographic products, which bond should be liable for any loss or damage by reason of the failure of the photographer or its soliciting agent to fully perform any contract, representation or obligation in connection with the sale of any coupon, cannot be upheld as a burden on interstate commerce incidental to the exercise of a police regulation designed to prevent frauds, since the bonding requirement has no substantial relation to the prevention of frauds, but places a direct and unwarranted burden upon interstate commerce.

APPEAL by defendant from *Burgwyn, Special Judge,* and a jury, at Special November Term, 1950, of EDGECOMBE.

Criminal prosecution under warrant charging the defendant with selling coupons while taking orders for photographs without having filed with the Clerk of the Superior Court of Edgecombe County a bond as required by Chapter 25, Session Laws of 1943, now codified as Article 12 of Chapter 66 of the General Statutes of North Carolina (G.S. 66-59 through 66-64). The pertinent parts of this statute are as follows:

"Section 1. The title of this Act shall be 'An Act to Prevent the Perpetration of Certain Fraudulent Practices by Photographers within the State of North Carolina.'

"Sec. 2. Definitions:

"The term 'Solicitor' as used herein shall mean any agent, salesman, employee, solicitor, canvasser, or any other person acting for or on behalf of a photographer.

"Sec. 3. No photographer or solicitor shall sell or issue any coupon, whether for a consideration or otherwise, purporting to be exchangeable, redeemable, or payable, in whole or in part, for any product of photography, including photographs, coloring, tinting, frames, mounts, folders, copying or the reproduction of photographs, and all other products of photography, unless the principal for which said business is conducted shall first file with the clerk of the Superior Court in each and every county in which said business is to be conducted a good and sufficient bond in the principal sum of two thousand dollars ($2,000.00), the condition of such bond being that the principal shall well and truly discharge all contracts, representations and other obligations made by said principal and all contracts, representations and other obligations made by any solicitor of such principal.

"Sec. 4. The coupons, as above defined, issued in any county shall be serially numbered, and before any bond, herein required to be filed, can be withdrawn, the principal on said bond shall file a sworn statement with the clerk, showing the lowest and highest serial number of the coupon, the total number issued, and the total number that has been redeemed. On the unredeemed coupons, the said principal shall show the name and address of the person to whom the said coupon was issued; that each of said persons have been notified, in writing, at the address shown, at least thirty (30) days prior thereto, to redeem said coupon, or otherwise that said coupon would become void on a day certain stated in said notice.

"Sec. 5. Any person sustaining any loss or damage by reason of any photographer or solicitor failing to fully perform and discharge any contract, representation or other obligation in connection with the sale of any coupon purporting to be exchangeable, redeemable or payable, in whole or in part, for any product of photography, whether such contract, promise or representation be made by the photographer or solicitor, may recover in any court of competent jurisdiction against the principal and his, her or its surety, the sum of twenty-five dollars ($25.00), in addition to any actual loss or damage sustained, and any amount so recovered shall be a specific lien on the bond filed as herein required.

"Sec. 6. Any person violating the provisions of this Act, including the make (making) of any false statement in the affidavit required under Section four of this Act, shall be guilty of a misdemeanor and, upon conviction, be fined or imprisoned, or both, in the discretion of the court."

The case was first heard in the Recorder's Court of the City of Rocky Mount, whence from a judgment of guilty the defendant appealed to the Superior Court of Edgecombe County, where the case was heard, upon defendant's plea of not guilty, on the original warrant. The jury returned a special verdict finding, among other things, these pertinent facts:

1. On 24 July, 1950, Olan Mills, Inc., having its principal office and place of business in Chattanooga, Tennessee, was engaged in the business of photography, and the defendant was one of its solicitors of business.

2. The defendant on that date in the City of Rocky Mount, Edgecombe County, North Carolina, solicited orders for photographs, and received a deposit of $1.00 on one such order and gave the customer a coupon-receipt.

3. The solicitation was made by the defendant under the corporation's usual plan of operation, which is:

(a) The initial orders for photographs are solicited in a municipality by a sales unit of from two to five solicitors.

(b) An advance deposit of $1.00 is collected from each customer, who is given a coupon-receipt entitling him to one unmounted photograph.

However, the corporation reserves the right to accept or reject any order accepted by its salesman.

(c) At the time the coupon-receipt is issued, the customer is notified where and when to appear later for the sitting within the municipality, at some location rented on a temporary basis.

(d) At the appointed time and place, a cameraman of the corporation takes the sitting or exposure.

(e) The exposed negatives are then sent by mail to the corporation's plant in Chattanooga, Tennessee. There the negatives are developed, processed, and the proofs are made.

(f) The proofs are then mailed back into the State to another representative of the corporation (herein referred to as the proof-passer).

(g) And the customer is notified by mail when and where he may contact the proof-passer, select the proof, and order additional pictures if desired.

(h) For the $1.00 initial deposit made to the solicitor, the customer is entitled to receive one unmounted photograph.

(i) These final orders are sent by mail to the corporation's plant in Chattanooga, where the finished photographs are processed or manufactured and mailed direct to the customer. No part of the processing or manufacturing is done within the City of Rocky Mount or the State of North Carolina.

(j) If additional photographs are ordered, the balance due on the order is paid cash-on-delivery.

4. No bond was filed with the clerk of the Superior Court of Edgecombe County as required by the statute.

Upon the coming in of the special verdict, the defendant moved for judgment of acquittal on the ground that the statute violated by the defendant is unconstitutional and void. The court overruled the motion and held that the defendant was "guilty as charged in the warrant," to which ruling the defendant excepted. The defendant then moved in arrest of judgment on the ground that the statute under which the warrant was drawn is violative of and repugnant to Article I, Sections 1, 17 and 31 of the Constitution of North Carolina, and is an unwarranted and invalid restraint of trade in interstate commerce and violative of Article I, Section 8, Clause 3 of the Constitution of the United States. The motion was overruled and the defendant excepted. The court then entered judgment adjudging the defendant guilty and decreeing that she pay a fine of $1.00 and the costs. Thereupon, the defendant renewed her motion in arrest of judgment. The motion was overruled and the defendant excepted.

From the judgment entered, the defendant appeals, assigning errors.

*Attorney-General McMullan and John R. Jordan, Jr., Member of Staff, for the State.*

*Battle, Winslow, Merrell & Taylor for defendant, appellant.*

*Of Counsel: Joe Van Derveer, Chattanooga, Tennessee.*

JOHNSON, J.   Decision here rests on the Commerce Clause of the Federal Constitution.   In disposing of the appeal on that ground, these two questions are posed: (1) Was the defendant, in soliciting orders for photographs, engaged in interstate commerce?   (2) If so, does the challenged statute place an undue or discriminatory burden upon such interstate commerce in violation of the Federal Constitution?

1. *The question of whether the defendant was engaged in interstate commerce.*—The defendant insists that in soliciting orders for photographs to be processed and manufactured in the State of Tennessee she was engaged in interstate commerce.   It is her contention that the series of connected in-and-out-of-state events necessary to consummate each sale, beginning with the solicitation of the order, constitutes an integrated chain of interstate commerce.   She insists that the act of soliciting the order in this State and the work of processing the negatives and that of first making the proofs and later manufacturing and finishing the photographs in the out-of-state studio, is each an essential, component part of the series of events making up one composite transaction in interstate commerce.   She therefore claims the protective benefits of the Commerce Clause of the Federal Constitution, Article I, Section 8, Clause 3, which provides that:

"The Congress shall have power to regulate commerce with foreign nations, and among the several states, and with the Indian tribes; . . ."

In support of her position, the defendant cites and relies upon the long line of "drummer" decisions of the Supreme Court of the United States beginning with *Robbins v. Shelby County Taxing District,* 120 U.S. 489, 30 L. Ed. 694, and running through the decision in *Nippert v. Richmond,* 327 U.S. 416, 90 L. Ed. 760.

The defendant's position appears to be well taken.   It is firmly established by the "drummer" decisions that where an order is solicited by an agent and the filling of the order and delivery of the goods require their transportation from one state to another, the solicitation transaction is one of interstate commerce.   *Nippert v. Richmond, supra* (327 U.S. 416, 90 L. Ed. 760); *Real Silk Hosiery Mills v. Portland,* 268 U.S. 325, 69 L. Ed. 982; *Sonneborn Bros. v. Cureton,* 262 U.S. 506, 67 L. Ed. 1095; *Cheney Bros. v. Massachusetts,* 246 U.S. 147, 62 L. Ed. 632; *Crenshaw v. Arkansas,* 227 U.S. 389, 57 L. Ed. 565; *Dozier v. Alabama,* 218 U.S. 124, 54 L. Ed. 965; *Rearick v. Pennsylvania,* 203 U.S. 507, 51 L. Ed. 295; *Caldwell v. North Carolina,* 187 U.S. 622, 47 L. Ed 336; *Stockard*

*v. Morgan,* 185 U.S. 27, 46 L. Ed. 785; *Brennan v. Titusville,* 153 U.S. 289, 38 L. Ed. 719; *Asher v. Texas,* 128 U.S. 129, 32 L. Ed. 368; *Corson v. Maryland,* 120 U.S. 502, 30 L. Ed. 699; *Robbins v. Taxing Dist.,* 120 U.S. 489, 30 L. Ed. 694. See Annotations: 60 A.L.R. 994; 101 A.L.R. 126; 146 A.L.R. 941.

All the more is the act of solicitation an integral part of interstate commerce where, as in the instant case, the order obtained is subject to acceptance or rejection by the out-of-state principal. *Stockard v. Morgan, supra* (185 U.S. 27, 46 L. Ed. 785). See Annotations: 60 A.L.R. 994, p. 1000 *et seq.*

The State, in urging that the defendant's activities in soliciting the orders for photographs may be treated as a purely local incident having no substantial relation to interstate commerce, cites and relies upon *Lucas v. City of Charlotte,* 86 F. 2d 394, 109 A.L.R. 297. That case, however, is not controlling. There the plaintiffs owned a studio in St. Paul, Minnesota, and were engaged in operating a transient photographic business, with salesmen and photographers operating in North Carolina under a plan of operations similar to that in the instant case. The plaintiffs brought suit in the United States District Court asking for injunctive relief against the collection of state and municipal license taxes sought to be collected as against both the canvassers and photographers, alleging that their dual-state operations amounted to interstate commerce and that the taxes complained of were unduly burdensome and discriminatory. The district court dismissed the bill. On appeal, the Circuit Court in its opinion stated: "We do not think that the fact that the negatives of the photographs, after the taking, are sent away to Minnesota to be finished, makes the transaction one of interstate commerce. The actual work of the photographer is done in the state and the mechanical finishing of the negative does not change the fact that the photographer is carrying on his business in the City of Charlotte and the State of North Carolina." The Court then, on finding that the amount of taxes involved did not exceed $75.00 per annum, held that "this amount was inadequate to confer jurisdiction upon the court," and thereupon affirmed the action of the lower court in dismissing the bill. It may be significant that the lower district court in dismissing the bill had rested its decision, in part at least, on the ground that the plaintiffs had an adequate remedy at law, and also that the bill was defective for misjoinder of parties, it appearing that both municipal and state taxing authorities had been joined in one action. Consequently, in the light of these background facts, it may well be that the Circuit Court in reaching its decision gave only oblique consideration to the interstate commerce phase of the case. Also, in the cited *Lucas case* it appears that the facts in respect to the details of the out-of-state processing and finishing work may not have been developed before

the court so as to show, as in the instant case, the importance of these phases of the picture making business. Hence, the facts there may have been treated as being different from those in the instant case. But be that as it may, on the evidence disclosed by this record we are constrained to treat the out-of-state activities of processing the negatives and the actual making of the photographs of sufficient importance to make the composite transaction one of interstate commerce. Here it has been made to appear that the details of the work surrounding the development of the negatives, the processing of the proofs, and the manufacturing of the portraits in the studio, after developing the raw negatives, are among the most vital phases of the picture making business. To appraise these out-of-state events other than as essential parts of an interstate commercial transaction would be to ignore natural logic and the practical import of these essential phases of picture making.

While *Lucas v. City of Charlotte, supra* (86 F. 2d 394, 109 A.L.R. 297), was decided in 1936, according to Shepard's Citation Service it has been cited with approval in only one case,—*Craig v. Mills,* 203 Miss. 692, 33 So. 2d 801 (decided in January, 1948), which is a photography case involving substantially the same plan of in-and-out-of-state operations as the instant case. The *Craig case* is also cited and relied upon by the State in support of its contention that the incident of solicitation should be treated as a purely local activity, not involving interstate commerce. A study of the *Craig case* reveals, however, that while it cites and approves the *Lucas case* on the principle of dissecting integrated interstate commercial transactions, nevertheless the court declined to enforce the Mississippi license tax against the studio's solicitors. In the cited *Craig case,* the State of Mississippi had levied a license tax as follows:

"Upon each person engaged in the business of selling, delivering or handling photographic coupons, certificates, or other devices used as or in exchange on photographs, or making or developing such photographs so procured to be made, the word person herein meaning, or limited to, an individual human being or person taking photographs in this state and developing same outside this state, as follows :" (Rates, $10.00 to $25.00, depending on size of municipality in which operations were conducted.)

The partnership of Olan Mills brought suit against the state tax collector to restrain the attempted collection of license taxes from each of its canvassers, photographers, and proof-passers. It was the contention of the plaintiff Studio that the collection of a separate tax from each of the members of these three groups of its employees would unduly burden the business. The Mississippi Court, acknowledging that there was "considerable merit in the contention," interpreted the taxing statute as being inoperative as to the canvassers and proof-passers, thus leaving the statute

to apply only to the photographers. It follows, therefore, that since the canvassers were relieved of the tax, the decision is only collaterally relevant to the question involved in the instant case dealing only with canvassers. The decision in the *Craig case* concedes that the plaintiff's business operations were of an interstate character. However, in sustaining the tax on the photographers, the court held that "The interstate commerce does not begin until after the work of the photographer in taking the negative is completed."

Thus, the two decisions, *Lucas v. City of Charlotte, supra,* and *Craig v. Mills, supra,* relied upon by the State, are fundamentally inconsistent. The *Lucas case* treats the out-of-state processing of negatives into proofs and the subsequent manufacturing of photographs as incidental, immaterial contributions to a purely local business activity, not amounting in any aspect to interstate commerce. Whereas, the *Craig case* recognizes that the operation of a between-states photographic business, like the one involved in the instant case, is interstate commerce, but holds that the business does not take on its interstate character until the work of both the salesman taking the orders and that of the photographer in making the exposure is over. It follows, therefore, that these two cases may not be reconciled, and both cases being at variance with the long line of determinative decisions of the Supreme Court of the United States and state courts of last resort repudiating or refusing to follow these suggested principles of dissecting and isolating integrated interstate commercial transactions, neither case may be treated here as authoritative. *Nippert v. Richmond, supra* (327 U.S. 416, 90 L. Ed. 760); *Real Silk Hosiery Mills v. Portland, supra* (268 U.S. 325, 69 L. Ed. 982); *Studio v. Portsmouth,* 95 N.H. 171, 59 A. 2d 475; *Graves v. City of Gainesville,* 78 Ga. App. 186, 51 S.E. 2d 58; *Olan Mills, Inc. v. Tallahassee,* ...... Fla. ......, 43 So. 2d 521; *Nicholson v. Forrest City,* 216 Ark. 808, 228 S.W. 2d 53. See also collection of decisions, Annotation 60 A.L.R. 996, p. 1000; and 11 Am. Jur., Commerce, Sec. 46, p. 45.

The recent decision of the Supreme Court of the United States in *Nippert v. Richmond, supra* (327 U.S. 416, 90 L. Ed. 760), seems to be decisive of the question here presented. There the appellant was engaged in soliciting orders in Richmond for a $2.98 ladies garment made by a Washington, D. C., manufacturer. Under the manufacturer's plan of operations, the defendant on taking an order received from the purchaser a small down payment which paid her commission. The order was then mailed to the home office in Washington from whence the garment was sent through the mails, C.O.D. for the balance, to the purchaser. The orders were taken subject to out-of-state confirmation. The appellant had not complied with an ordinance of the City of Richmond which required a solicitor like her to pay a fixed-sum annual license fee of

$50.00. There, as here, it was urged that the incident of solicitation was a purely local transaction, which might be singled out and treated for local tax purposes "as separate and distinct from transportation or inter-course" in interstate commerce. There the attempt to isolate from an integrated chain of interstate transactions the important event of solicit-ing the order was disposed of by *Mr. Justice Rutledge* in this summary manner:

"If the only thing necessary to sustain a state tax bearing upon inter-state commerce were to discover some local incident which might be regarded as separate and distinct from 'the transportation or intercourse which is' the commerce itself and then to lay the tax on that incident, all interstate commerce could be subjected to state taxation and without regard to the substantial economic effects of the tax upon the commerce. For the situation is difficult to think of in which some incident of an interstate transaction taking place within a state could not be segregated by an act of mental gymnastics and made the fulcrum of the tax. All interstate commerce takes place(s) within the confines of the states and necessarily involves 'incidents' occurring within each state through which it passes or with which it is connected in fact. And there is no known limit to the human mind's capacity to carve out from what is an entire or integral economic process particular phases or incidents, label them as 'separate and distinct' or 'local,' and thus achieve its desired result." (90 L. Ed. 764.)

*Lucas v. City of Charlotte, supra,* was decided in the Circuit Court of Appeals in 1936. *Nippert v. Richmond, supra,* was decided by the Supreme Court of the United States in 1945. Yet, in the *Nippert* deci-sion the Court refused to treat the incident of solicitation as a purely local event and made no reference to the *Lucas case,* either in the opinion proper or in any of the footnotes.

It is also significant that a number of state courts, in dealing with in-and-out-of-state photographic transactions like those here involved, have followed the *Nippert case* in applying the principle that the incident of solicitation is an integral part of interstate commerce which may not be isolated and segregated:

In *Studio v. Portsmouth, supra* (95 N.H. 171, 59 A. 2d 475, decided 1 June, 1948), solicitors were canvassing high school graduating classes in the State of New Hampshire for a Massachusetts studio. The exposures were to be made by cameramen in New Hampshire, the nega-tives to be processed and developed and the photographs made in Massa-chusetts. There a fixed-sum license tax on both the solicitors and the cameramen was challenged as being violative of the Commerce Clause. It was there held, with the Court citing the *Nippert case,* that the work

of the solicitors, as well as that of the cameramen, was interstate commerce, and the tax statute was declared inoperative.

In *Graves v. City of Gainesville, supra* (78 Ga. App. 186, 51 S.E. 2d 58, decided 3 December, 1948), canvassers and cameramen were operating in the State of Georgia as agents of an Alabama studio. The plan of operations was substantially the same as in the instant case. There the statute imposed a fixed-sum tax on itinerant photographers. The statute was challenged as being violative of the Commerce Clause. The challenge was sustained, with the *Nippert case* being cited with approval.

*Olan Mills Inc. of Alabama v. City of Tallahassee, supra* (...... Fla. ......, 43 So. 2d 521, decided 23 December, 1949), is another photography case. It involves facts substantially similar to those in the instant case. There a city ordinance levied a fixed-sum license tax on the solicitors, the photographers, and the proof-passers, as in the Mississippi case of *Craig v. Olan Mills, supra* (203 Miss. 692, 33 So. 2d 801). There, as here, it was urged that the whole business should be treated as local, intrastate commerce, with the State relying upon the *Lucas case.* However, the Florida Court treated the *Lucas case* as not being authoritative, and held that the complainant's business was properly classified as interstate commerce. Accordingly, the challenged ordinance, as applicable to complainant, was held inoperative as being unduly burdensome and discriminatory. The opinion cites and follows *Nippert v. Richmond, supra* (327 U.S. 416, 90 L. Ed. 760); *Graves v. Gainesville, supra* (78 Ga. App. 186, 51 S.E. 2d 58); and *Studio v. City of Portsmouth, supra* (95 N.H. 171, 59 A. 2d 475).

*Nicholson v. Forrest City, supra* (216 Ark. 808, 228 S.W. 2d 53, decided 6 March, 1950), is also a photography case. The plan of operations was practically the same as in the instant case. There the solicitors, the photographers, and the proof-passers, like the defendant in the case at bar, were agents of Olan Mills, Inc., of Chattanooga, Tennessee. There, as in the Florida case of *Olan Mills, Inc. v. Tallahassee, supra* (...... Fla. ......, 43 So. 2d 521), the city ordinance levied a fixed-sum tax on the three groups of field representatives, namely: the solicitors, the photographers, and the proof-passers. The activities of these three groups of field representatives were treated as being integrated parts of a series of acts constituting interstate commerce. The decision turns on the *Nippert case,* which is cited with approval. The challenged ordinance was declared inoperative as to all three groups, as being violative of the Commerce Clause.

Such has been the thread of authoritative decision since the first "drummer" case in 1886 (*Robbins v. Shelby County Taxing District, supra*). It is in line with the observation of *Mr. Justice Van Devanter* in commenting upon the bounds and limits of the Commerce Clause in

*Dahnke-Walker Milling Co. v. Bondurant,* 257 U.S. 282, 66 L. Ed. 239, top p. 244, when he said that interstate commerce "comprehends all commercial intercourse between different states and all the component parts of that intercourse."

That the bounds and limits of "interstate commerce" should so encompass "all the component parts" of commercial intercourse "among . . . the several states," is in harmony with the purpose of the Founding Fathers in delegating to Congress the power to regulate interstate commerce, as aptly expressed by *Mr. Justice Daniel* in delivering the opinion in *Veazie v. Moor,* 14 How. (U.S.) 568, 14 L. Ed. 543, top p. 548 : "The design and object of that power, as evinced in the history of the Constitution, was to establish a perfect equality amongst the several states as to commercial rights, and to prevent unjust and invidious distinctions, which local jealousies or local and partial interests might be disposed to introduce and maintain."

We hold, therefore, that the defendant in soliciting orders for photographs was engaged in interstate commerce.

2: *The question of undue burden on interstate commerce.*—The Commerce Clause of the Federal Constitution, Article I, Section 8, Clause 3, "expressly commits to Congress and impliedly withholds from the several states the power to regulate commerce among" the states. *Dahnke-Walker Milling Co. v. Bondurant, supra* (257 U.S. 282, 66 L. Ed. 239, bot. p. 243). See also *Pennsylvania v. West Virginia,* 262 U.S. 553, 67 L. Ed. 1117, p. 1132.

This is not to say, however, that the constitutional grant to Congress of the power to regulate interstate commerce forestalls all state actions affecting such commerce. *Carolina State Highway Dept. v. Barnwell Brothers,* 303 U.S. 177, 82 L. Ed. 734. The states in the exercise of the reserved police power may enact statutes in furtherance of the public health, the public morals, the public safety, and the public convenience, which may burden and bear upon interstate commerce,—provided such statutes are local in character and bear upon interstate commerce incidentally only. *Boston & M. R. Co. v. Armburg,* 285 U.S. 233, 76 L. Ed. 729 ; *Hannibal, etc. R. R. Co. v. Husen,* 95 U.S. 465, 24 L. Ed. 527.

"To render applicable the rule upholding state police regulations incidentally affecting interstate commerce, the legislation in question must be a real and *bona fide* exercise of the police power; such power may not be used as a mere cover for what amounts essentially to a regulation of interstate commerce or the imposition of a direct burden thereon." 15 C.J.S., Commerce, Sec. 11, p. 268.

While it may be conceded that regulations designed to prevent frauds are embraced within the scope of the police power (11 Am. Jur., p. 1027; *Merrick v. Halsey & Co.,* 242 U.S. 568, 61 L. Ed. 498), nevertheless an

express purpose to prevent possible frauds does not justify state legislation which really goes beyond the legitimate pale of regulation and interferes with the free flow of interstate commerce. *Real Silk Hosiery Co. v. Portland, supra* (268 U.S. 325, 69 L. Ed. 982).

It must appear that there is "some clear, real and substantial connection between the assumed purpose of the enactment and the actual provisions thereof, and that the latter do in some plain, appreciable and appropriate manner tend toward the accomplishment of the object for which the power is exercised." 16 C.J.S., Constitutional Law, Sec. 195, pp. 563 and 564.

Since the range of a state's police power "comes very near to the field committed by the Constitution to Congress, it is the duty of the courts to guard vigorously against any needless intrusion." *Hannibal, etc. R. R. Co. v. Husen, supra* (95 U.S. 465, 24 L. Ed. 527, bot. p. 531).

It is also fundamental that a burden imposed upon interstate commerce may not be sustained simply because the statute imposing it applies alike to the people of all states, including the people of the state enacting such statute. *Nippert v. Richmond, supra; Brennan v. Titusville, supra* (153 U.S. 289, 38 L. Ed. 719; *Minnesota v. Barber,* 136 U.S. 313, 34 L. Ed. 455; *Robbins v. Taxing Dist., supra* (120 U.S. 489, 30 L. Ed. 694); 15 C.J.S., Commerce, Sec. 60, p. 378. See also *Dean Milk Co. v. Madison,* 340 U.S. 349, 95 L. Ed. (Adv. Op.) 228.

The challenged statute is an innovation in the field of commercial regulation in this State. It singles out for regulation one branch of photography,—the branch which gathers its business through the medium of canvassers and salesmen. The statute requires the posting of an indemnity bond as a condition precedent to engaging in this branch of photography. Anyone who would operate this type of business, before canvassing for an order, must "file with the clerk of the Superior Court in each and every county in which business is to be conducted a good and sufficient bond in the . . . sum of Two Thousand ($2,000.00) Dollars," conditioned that the "principal shall . . . discharge all contracts, representations, and other obligations" made either by the principal or by "any solicitor of such principal."

This bonding requirement, it would seem, reaches beyond the justifiable purpose of the statute, which is, as expressed in the Act: "to prevent the perpetration of certain fraudulent practices by photographers within the State of North Carolina." Here it is significant that the burdens imposed by the bonding requirement are not limited to protecting or indemnifying purchasers of articles of photography against fraudulent practices. The bond is made liable for all "representations, and other obligations" of any solicitor. Hence, this requirement engrafts upon the bond

unlimited liability for any and all representations and obligations of any solicitor, without regard for the presence or absence of elements of fraud.

Also, in burdening the bond with unlimited liability for any "representation, or other obligation" of any solicitor, the statute in effect suspends settled rules of law governing the relation of principal and agent, under which ordinarily the principal may not be held liable for acts and conduct of the agent beyond the scope of the agent's authority, actual or apparent. In one stroke, the challenged statute strikes down these fixed rules of substantive law and substitutes in lieu thereof an arbitrary rule of unlimited liability,—all under the pretext of preventing fraud in respect to an occupation heretofore treated as one of the lawful callings of life. (*S. v. Ballance,* 229 N.C. 764, p. 770, 51 S.E. 2d 731.)

The bonding requirement, in attempting to extend liability to the outermost limits of simple contractual liability, without reference to fraudulent practices, and in attempting to suspend the doctrine of *respondeat superior,* goes beyond the limits of legitimate regulation. These conditions engrafted by the statute upon the bonding requirement, when interpreted in the light of common knowledge, would seem so to fetter the bond with contingent liabilities as to make compliance onerously difficult, if not prohibitory. Here the statute moves close to, if not beyond, the permissive bounds of the due process and equal protection clauses of the Constitutions.

The challenged statute is also discriminatory and unduly burdensome because of the fixed-sum nature of the bonding requirement. Obviously there should be a direct relation between the volume of business transacted by a studio engaged in this type of business and the frequency in which the sanctions imposed by the statute may reasonably be expected to be called into play. However, the statute makes no provision by which the amount of the bond may be varied to fit the size or volume of business. It bears alike upon the large and the small operator. The studio whose salesmen collect deposits of $1.00 is required to post the same bond as the studio whose salesmen may collect larger or smaller sums. Whether the number of canvassers sent out from a studio into a given county may be one or a dozen, the same bond of $2,000 is required. Whether the county be one of large or small population, bond in the same amount is required. For canvassing a county for only a few days, the same bond is required as for a year.

The fixed-sum bonding requirement, in failing to provide flexibility in reasonable relation to the volume of sales, is inherently discriminatory and unduly burdensome on interstate commerce, and violative of the principle applied in *Nippert v. Richmond, supra.* There, the fixed-sum license tax sought to be collected from the appellant Nippert, who was canvassing orders for garments to be shipped by an out-of-state manufac-

turer, was held inoperative as to her as being an undue burden on interstate commerce. In that case the essence of the burden which was declared unduly oppressive sprung from the discrimination that was inherent in the fixed-sum license tax which bore no flexible relation to the volume of business. There it was said: "So far as appears a single act of unlicensed solicitation would bring the sanction into play. The tax thus inherently bore no relation to the volume of business done or returns from it." (90 L. Ed., top p. 767.)

The principle applied in the *Nippert case* is applicable here. It makes no material difference that in the *Nippert case* the fixed-sum burden imposed on the incident of solicitation took the form of a license tax. Whereas, in the instant case the fixed-sum burden stems from a bonding requirement imposed under colorable exercise of the police power. It is the ultimate effect of the fixed-sum burden that controls. Where sanctions imposed by a regulatory measure bear no substantial relation to the legitimate objects sought to be obtained, and impose direct burdens and stifling restrictions upon interstate commerce, it matters not that such burdens be imposed under guise of the police power, rather than the taxing power.

We are constrained to the view that the bonding requirement here imposed bears no substantial relation to the legitimate purpose of the statute, *i.e.,* the prevention of fraud. It is obvious that this requirement places more than an incidental burden on interstate commerce. It places a direct, unwarranted burden thereon. All the more is this so in the light of the multiple nature of the requirement which makes it necessary for a separate bond to be filed in each and every county in which business is to be conducted.

The decision in *Town of Green River v. Bunger,* 50 Wyo. 52, 58 P. 2d 456 (appeal dismissed in 300 U.S. 637, 81 L. Ed. 854), relied upon by the appellee, is distinguishable, as pointed out in the recent decision in *Breard v. Alexandria* (341 U.S. 622, 95 L. Ed. 838, filed 4 June, 1951). The *Breard case* is also distinguishable from the instant case: there the police power was invoked by the City of Alexandria to give protection against a type of house-to-house canvassing which was treated in the challenged city ordinance as a social evil amounting to a public nuisance to be summarily suppressed as being subversive of the rights of citizens in the enjoyment of the privacy and quiet of their homes.

See also *Studio v. Portsmouth, supra* (95 N.H. 171, 59 A. 2d 475); *Graves v. City of Gainesville, supra* (78 Ga. App. 186, 51 S.E. 2d 58); *Olan Mills, Inc. v. Tallahassee, supra* ( ..... Fla. . , 43 So. 2d 521); *Nicholson v. Forrest City, supra* (216 Ark. 808, 228 S.W. 2d 53).

For the reasons given, Chapter 25, Session Laws of 1943, now codified as Article 12, Chapter 66, of the General Statutes of North Carolina (G.S. 66-59 through 66-64) is repugnant to the Commerce Clause,—

Article I, Section 8, Clause 3, of the Constitution of the United States. Therefore, the statute is declared invalid and inoperative as applied to the appellant herein.

With decision here resting on the Commerce Clause, it is not necessary for us to discuss, and we refrain from further expressing an opinion as to, the appellant's remaining exceptions which challenge the statute as being violative of the Constitution of North Carolina, Article I, Sections 1, 17, and 31. It is enough to say that these protective safeguards,— counterparts of the Federal due process and equal protection clauses,— still stand as sentinels in the marketplace, ever vigilant and ready to lift stifling burdens from the portals of those who in fair competition make the better mouse traps.

The judgment below is

Reversed.