# Richmond

COMMONWEALTH OF VIRGINIA V. OLAN MILLS,
INCORPORATED, ET AL.

March 7, 1955.

Record No. 4314.

Present, All the Justices.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General* and *Francis C. Lee, Assistant Attorney General,* for the Commonwealth.

*Williams, Mullen, Pollard & Rogers* and *Hunt & Ingle,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

Olan Mills, Incorporated, a Tennessee corporation, and P. W. McCarter, its agent, were tried on warrants charging them with operating a photographer's business without a license in violation of § 58-393 of the Code,[1] constituting a misdemeanor punishable by fine. Code § 58-251. On their trial to the court without a jury, the facts being stipulated, they were acquitted and the Commonwealth appeals. Code § 19-255.

Section 58-393 is a revenue measure and does not rest upon the principles applicable to the exercise of the police powers of the State. *Moore* v. *Sutton,* 185 Va. 481, 39 S. E. (2d) 348.

The agreed facts are as follows:

Olan Mills is a Tennessee corporation with its principal office in Chattanooga in that State, but qualified to do busi-

---

[1] "§ 58-393. Photographers.—Every photographer and every person who shall canvass for any photographer or shall act as the agent of the photographer in transmitting pictures or photographs to other points for the purpose of having them copied, enlarged or colored shall obtain a license.

"Nothing in this section shall apply to amateur photographers who expose, develop and finish their own work and who do not part with the same for compensation, or receive any compensation for performing any of the processes of photography.

"Every photographer and every such agent or canvasser shall pay for the privilege the sum of ten dollars in a county or in a town of two thousand inhabitants or under; and if in a city or town of more than two thousand and less than ten thousand inhabitants, he shall pay thirty dollars; and if in a city of more than ten thousand and less than twenty thousand inhabitants, he shall pay forty dollars; and if in a city of more than twenty thousand inhabitants, he shall pay fifty dollars; and he shall pay an additional sum of five dollars for each county or city in which he operates other than that in which he has his regular place of business."

ness in Virginia (Code § 13-211). In its operations an advance sales unit, composed of from two to five persons, employed by and under the supervision of Olan Mills, solicits orders for photographs in a municipality in Virginia. All orders are accepted for future delivery, to be manufactured, processed and finished in Chattanooga. At the time the order is accepted the customer is notified when and where to appear to have a "sitting" or "exposure" made, and at the same time a fifty-cent deposit is collected. These sittings or exposures are made at a hotel or other location rented on a temporary basis. The corporation reserves the right to accept or reject the order given its salesman.

At the appointed time and place a cameraman, also employed by and under the supervision of the Chattanooga office of the corporation, takes the sitting or exposure and an additional deposit of fifty cents is then collected. The negatives so taken are forwarded by mail to the corporation's plant in Chattanooga and are there developed, processed and proofs manufactured. The proofs are then sent by mail to another agent of the corporation at the place where the order was taken. The customer is notified by mail as to the time and place to select the proof and order any additional pictures desired. For the one dollar previously deposited the customer receives one 8 x 10 unmounted photograph, and orders for additional photographs are sent by mail to the corporation's plant in Chattanooga where the finished photographs are processed or developed, and mailed directly to the customer. Any amount due for the additional photographs, mountings, tinting, &c., all of which is done in Chattanooga, is paid in cash on delivery.

No part of the processing or manufacturing is done within the State of Virginia.

The warrant against McCarter was issued by reason of his soliciting an order for a photograph and performing the duties of his employment by Olan Mills as a member of an advance sales unit in the city of Danville, Virginia.

The warrant against Olan Mills was issued to cover the

corporation's criminal liability for the acts of McCarter and its other employees in the city of Danville, including its cameraman, who took sittings or exposures as an employee of the corporation and under the supervision of its principal office in Chattanooga.

The two defendants will be herein referred to collectively as the defendant.

The trial court held that if the statute be construed to cover the defendant's operations, then it is invalid because it imposes an undue burden on interstate commerce in violation of the Commerce Clause, Article 1, Section 8, of the Constitution of the United States.

The Commonwealth contends that interstate commerce is not involved but that the statute taxes simply the defendant's business of taking the photograph, not the subsequent sale; that the case involves not the validity of a license to engage in interstate business of selling photographs or photographic supplies, but a license which must be procured in order to do the essential act which makes possible the subsequent sale.

Olan Mills insists, on the other hand, that it is the complete photographer's business upon which the legislature has imposed the tax, and that if the statute is construed so as to apply to the business carried on by Olan Mills it is invalid because it imposes a tax on interstate commerce and is discriminatory in its operation.

Section 58-393 lays the tax on "every photographer". A photographer is defined as "one who practices, or is skilled in, photography"; and photography is "the art or process of producing images on sensitized surfaces by the action of light or more generally, of any form of radiant energy. The images produced may be either visible, in which case they must be fixed by the removal of the unchanged sensitive material, or invisible when by further chemical treatment, known as development, a visible image is produced." Webster's New Int. Dict., 2 ed., p. 1847.

The second paragraph of the statute provides that it shall

not apply to amateur photographers "who expose, develop and finish their own work" and not for compensation.

It seems clear, not only from the definition of the word, but from the language of the statute itself, that the person who is taxed as a photographer is one who produces a completed picture, not each individual who performs one of the essential acts, or takes one of the essential steps, toward that result. One who merely operates a camera and takes an exposure from which no picture is developed would not be required to have a license for that specific act. McCarter, the individual here charged, was not even a cameraman; he was a solicitor.

■ Here the negatives produced by the cameraman are sent to the defendant's plant in Tennessee where they are developed, processed and proofs manufactured. The customer in Virginia orders from these proofs and the finished photographs are then processed and manufactured in Tennessee and mailed to the customer in Virginia. What the defendant sells and what the customer buys is not the negative taken in Virginia but the finished picture which comes to him by mail from Tennessee, where it was made into a salable article. Clearly the transaction which was the basis for the charge that the defendant engaged in the business of a photographer without having the license required by § 58-393 involved interstate commerce. The resulting question is whether the statute when applied to the defendant's activities imposed an unlawful burden on that commerce, or whether the part that was done in Virginia was a local incident sufficiently separate and distinct from the commerce as to be subject to State taxation.

In *McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33, 60 S. Ct. 388, 84 L. ed. 565, it was held that there was no infringement of the Commerce Clause by a sales tax levied by New York city on coal sold there and delivered after being transported from mines in Pennsylvania. The court said that State taxation whose tendency is to prohibit interstate commerce or place it at a disadvantage, in com-

petition with intrastate commerce, or which discriminates against interstate commerce, is an unconstitutional exercise of State taxing power. But it was held that the New York sales tax did not aim at or discriminate against interstate commerce but was laid on every purchaser within the State of goods for consumption regardless of whether they had been transported in interstate commerce, and that the only relation of the tax to the commerce "arises from the fact that immediately preceding transfer of possession to the purchaser within the state, which is the taxable event regardless of the time and place of passing title, the merchandise has been transported in interstate commerce and brought to its journey's end." 309 U. S. at p. 49, 60 S. Ct. at p. 394, 84 L. ed. at p. 572. The tax was upon an activity, said the court, "which, apart from its effect on the commerce, is subject to the state taxing power." 309 U. S. at p. 58, 60 S. Ct. at p. 398, 84 L. ed. at p. 577.

However, in *Nippert* v. *City of Richmond*, 327 U. S. 416, 66 S. Ct. 586, 90 L. ed. 760, it was held that a license tax laid by an ordinance of the city of Richmond upon engaging in business as a solicitor would run afoul of the Commerce Clause if applied to Nippert, an employee of a garment company in Washington, D. C., who took orders in Richmond for ladies' garments to be afterwards shipped into the State and paid for on delivery. The court rejected the theory that the tax imposed was on a local event, soliciting, separate and distinct from interstate commerce, saying that if the only thing necessary to sustain a State tax bearing upon interstate commerce were to discover some local incident which might be regarded as separate and distinct, and then lay a tax on that incident, all interstate commerce could be subjected to State taxation.

That decision dispelled the notion that there had been a relaxation of the holding in the "drummer cases" (*Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, 7 S. Ct. 592, 30 L. ed. 694, and cases following; see *McGoldrick* v. *Berwind-White Coal Mining Co.*, *supra*, note 11; and *State*

v. *Mobley*, 234 N. C. 55, 66 S. E. (2d) 12, 15) forbidding the imposition of a State tax on a solicitor of orders for goods to be shipped to purchasers by sellers from without the State. The court said that the taxes outlawed in the "drummer cases" worked a discrimination against interstate commerce which the New York sales tax in the *McGoldrick* case did not do.

More recently in *Memphis Steam Laundry Cleaner* v. *Stone*, 342 U. S. 389, 72 S. Ct. 424, 96 L. ed. 436, the court held that a Mississippi statute taxing laundries not licensed in that State infringed upon the Commerce Clause when applied to a Tennessee laundry which sent trucks into Mississippi where its drivers picked up, delivered and collected for laundry and sought new customers. The court said that the tax violated the Commerce Clause whether it was considered as being laid on soliciting as a local activity or upon the activity of picking up and delivering laundry; that the court had not permitted State taxation "to carve out this incident [soliciting interstate business] from the integral economic process of interstate commerce." 342 U. S. at p. 393, 72 S. Ct. at p. 426, 96 L. ed. at p. 439. Cf. *Joseph* v. *Carter & Weekes Stevedoring Co.*, 330 U. S. 422, 67 S. Ct. 815, 91 L. ed. 993, holding that stevedoring (consisting in that case of taking freight from a convenient place on the pier or lighter and storing it properly for safety and for handling in or on the outgoing vessel alongside, or of similarly unloading a vessel on its arrival) was essentially a part of the commerce itself and therefore a tax upon the privilege of conducting that business for interstate commerce was invalid.

Likewise, in *Railway Express Agency* v. *Commonwealth of Va.*, 347 U. S. 359, 74 S. Ct. 558, 98 L. ed. 757, the court said that "we recently have ruled that local incidents such as gathering up or putting down interstate commodities as an integral part of their interstate movement are not adequate grounds for a state license, privilege or occupation tax." 347 U. S. at p. 368, 74 S. Ct. at p. 563, 98 L. ed. at p. 764.

In the case of *County Board of Arlington County* v.

*Arcade-Sunshine Co., et al.,* 196 Va. 916, decided today, we held, upon the reasoning and authorities set out in that opinion, that the picking up of soiled articles and their delivery as laundered articles could not be so severed from the movement of the goods in interstate commerce as to create a local taxable incident in Arlington county.

No more, we think, can the act of the cameraman be isolated from the rest of the functions involved in making the finished photograph which was sold to the customer, so as to make that act a taxable local incident separate and distinct from the sum of the other functions and activities which constituted interstate commerce. The soliciting of the orders, the act of the cameraman, the developing and processing of the negatives into proofs, the processing of the proofs into the finished photographs and the interstate movement which links these acts together and brings to consummation the sale of the finished picture, constitute an integral chain of interstate commerce. The act of the cameraman, which is the second step in the interstate transaction begun by the act of the solicitor, undeniably non-taxable, cannot be regarded as an activity "in a vacuum," but it is an essential part of a connected series of events which together made one composite transaction in interstate commerce which the Commerce Clause of the Constitution shelters from the application of a State license tax of the kind created by § 58-393.

The decided majority of State courts which have dealt with the same question, arising on identical or similar facts and under similar statutes, have held that the acts of the solicitor, or of the cameraman, or of both, were integral parts of interstate commerce.[2]

---

[2] *State* v. *Mobley,* 234 N. C. 55, 66 S. E. (2d) 12; *Warren &c. Studio* v. *City of Portsmouth,* 95 N. H. 171, 59 A. (2d) 475; *Graves* v. *City of Gainesville,* 78 Ga. App. 186, 51 S. E. (2d) 58; *Olan Mills, Inc.* v. *City of Tallahassee,* (Fla.), 43 So. (2d) 521; *Nicholson* v. *Forrest City,* 216 Ark. 808, 228 S. W. (2d) 53; *Cordell* v. *Commonwealth,* (Ky.), 254 S. W. (2d) 484; *Bossert* v. *City of Okmulgee,* (Okla. Cr. App.) 260 P. (2d) 429; *Olan Mills, Inc.* v. *City of Cape Girardeau,* —— Mo. ——, 272 S. W. (2d) 244.

We have been referred to and have found but three cases which take the other view.[3] We think the holding of the majority is the more logical and in accord with the recent decisions of the Supreme Court, whose views are controlling on this question.

In *State* v. *Mobley*, note 2, most of the cases are reviewed in a comprehensive and well-reasoned opinion, and it is pointed out that the *Lucas* case (4 Cir., 86 F. (2d) 394) had distinguishing features, and that in the case of *Craig* v. *Mills*, (Miss.), it was conceded that the business operations of Olan Mills were of an interstate character although it was held that the business did not assume that character until the work of the solicitor and of the cameraman was over. It may be observed too that *Craig* v. *Mills* was relied on in *Stone* v. *Memphis Steam Laundry Cleaner*, (Miss.), 53 So. (2d) 89, which was reversed by the Supreme Court in *Memphis Steam Laundry Cleaner* v. *Stone, supra*. The opinion in *Olan Mills, Inc.* v. *City of Cape Girardeau*, note 2, also discusses the *Lucas* and *Craig* cases, as well as the Alabama case of *Graves* v. *State*, and concludes that they are not in accord with the rulings of the courts of last resort of the United States and of the other States.

For the reasons given we hold that § 58-393 of the Code, on the facts herein stated and agreed, is not applicable to the defendants Olan Mills, Incorporated, and P. W. McCarter, and the judgment of the trial court finding them not guilty of the charges in the warrants is accordingly

*Affirmed.*

---

[3] *Lucas* v. *City of Charlotte*, 4 Cir., 86 F. (2d) 394; *Craig* v. *Mills*, 203 Miss. 692, 33 So. (2d) 801; *Graves* v. *State*, 258 Ala. 359, 62 So. (2d) 446.