STATE OF NORTH CAROLINA EX REL UTILITIES COMMISSION v. ATLANTIC GREYHOUND CORPORATION, A CORPORATION.

(Filed 24 February, 1960.)

**1. Carriers § 1: Constitutional Law § 27—**

A State regulation which prohibits the free exercise of a carrier's franchise to engage in interstate commerce is void.

**2. Same: Constitutional Law § 11—**

The State in the exercise of its police power may require common carriers to provide services reasonably necessary for public convenience provided its regulations do not unduly burden interstate commerce.

**3. Same—**

The Utilities Commission has authority to require bus companies to maintain a union bus station in municipalities served by more than one carrier and may require all such carriers, both interstate and intrastate, to use such union stations and sell tickets thereat through an agent acting impartially for all such carriers, and prescribe the manner of apportioning the cost of operation among the several bus lines using the facilities.

**4. Same: Constitutional Law § 12—**

A rule of the Utilities Commission proscribing an interstate carrier from maintaining an office for the sale of interstate tickets separate and apart from the ticket office at the union station, at which such carrier's tickets, as well as all other carriers using the station, are sold, is void as imposing an undue burden upon interstate commerce and also as violating the constitutional right guaranteed to every person to contract and utilize his properties to the fullest extent in a lawful manner to earn a living.

APPEAL by Queen City Coach Company, Carolina Coach Company, Seashore Transportation Company, Smokey Mountain Stages, Inc., and Carolina Scenic Stages, and the State of North Carolina, from *Clark, J.,* November, 1958 Civil Term, of WAKE. The appeal was docketed here at the Fall Term 1959 as No. 457.

In 1950 the Utilities Commission, hereafter called Commission, acting pursuant to the 1949 Bus Act (Art. 6C of the General Statutes),

promulgated rules and regulations covering the operation of motor buses. These rules became effective 1 October 1950. Rule 11, entitled "Union Passenger Bus Stations," in subsection 1 requires motor carriers to maintain a union station in those towns served by more than one bus company. Subsection 3 provides: "No carrier or carriers shall sell nor cause to be sold tickets in any city or town in which a Union Station is located in any place other than the Union Bus Station except by and with the consent of the Commission, and then such sales shall be under the direction of the Union Bus Station Manager, and both the expense and revenue of such sales shall be taken into the monthly account of the Union Station." Subsection 11 provides for the election or appointment of a station manager by the bus companies using the station. The rule requires impartiality by the station manager in offering the services of the several bus companies to prospective customers.

Rule 32 provides: "All facilities, services and accommodations provided by these rules for intrastate passengers at bus stations and on buses shall apply in like manner to interstate passengers of carriers authorized to operate in both intrastate and interstate commerce in North Carolina."

Charlotte, N. C., is served by the following bus companies: Queen City Coach Company, Carolina Coach Company, Seashore Transportation Company, Smokey Mountain Stages, Inc., and Carolina Scenic Stages, all hereafter referred to as complainants, and Atlantic Greyhound Corporation, hereafter referred to as respondent. Complainants and respondent, acting in conformity with the rules of the Commission, established and operate a union station in Charlotte. They provide for the sale of tickets there for both intrastate and interstate transportation over their respective lines by the union bus station manager.

Respondent holds a certificate of convenience and necessity issued by the Interstate Commerce Commission pursuant to the provisions of Part II of the Interstate Commerce Act (49 USCA 301 *et seq.*).

On 15 November 1956 respondent opened an office in Charlotte for the sale of interstate tickets over its lines. This office provided additional place at which prospective customers might purchase transportation beyond the borders of the State of North Carolina. Sales of tickets and information with respect to schedules and services are limited to those offered by respondent. Tickets for intrastate transportation are not offered for sale at this office; such sales are only made by the union bus station manager.

Within a few days after respondent opened its own ticket office,

complainants filed a petition with the Commission charging respondent with violating the provisions of rules 11 and 32 promulgated by the Commission. They sought an order from the Commission prohibiting respondent from selling interstate tickets at any point in Charlotte other than the union bus station or by anyone other than the union station manager.

Respondent answered and admitted it had opened and was operating an office, outside of the bus station, by agents selected by it for the sale of tickets in interstate commerce. It challenged the interpretation which complainants had given to the rules promulgated by the Commission and the validity of those rules if interpreted as complainants contended, as a burden on interstate commerce and a violation of respondent's right to exercise without impairment the certificate of convenience and necessity issued to it by the Interstate Commerce Commission.

The Commission heard evidence and made findings of fact and conclusions of law. It found that the sale of tickets by an agent of respondent in a place other than the union station was a violation of the rules. It interpreted the rules to apply to the sale of interstate as well as intrastate tickets. The Commission thereupon ordered respondent to cease selling tickets except in the union station until otherwise authorized by the Commission.

Respondent appealed to the Superior Court. Its appeal was heard at the November Term 1958. The parties agreed that *Judge Clark* might take the matter under advisement and render judgment out of term. His judgment was rendered 3 February 1959. He held the rule, as applied by the Commission, was invalid as asserted by respondent and sustained its exceptions. Complainants and the Commission appealed.

*Attorney General Seawell and Assistant Attorney General Burns for the State of North Carolina.*

*Shearon Harris and Samuel Behrends, Jr., for Queen City Coach Company, Carolina Scenic Stages, and Smoky Mountain Stages.*

*Arch T. Allen for Carolina Coach Company.*

*D. L. Ward for Seashore Transportation Company.*

*Reade, Fuller, Newsom & Graham and Joyner & Howison for Atlantic Greyhound Corporation.*

RODMAN, J. The Commission in its order said: "For all practical purposes the material facts are not in dispute. The matter resolves itself into a question of law as to the validity of the rule in question

with respect to the operation of a ticket office in Charlotte, separate and apart from the Union Bus Station."

For the purposes of this appeal we accept the Commission's interpretation of the rules promulgated by it as applicable to both interstate and intrastate commerce. Accepting that interpretation, the Commission correctly concluded that the question presented was its power to prohibit a duly licensed interstate carrier from selling its services in a place other than the market house used by all carriers and by an agent other than the agent serving all carriers.

Appellants concede that a regulation which prohibits the free exercise of the respondent's franchise to engage in interstate commerce is void. *S. v. Mobley,* 234 N.C. 55, 66 S.E. 2d 12; *Castle v. Hayes Freight Lines,* 348 U.S. 61, 99 L. ed. 68; *Buck v. Kuykendall,* 267 U.S. 307, 69 L. ed. 623; *Shafer v. Farmers Grain Co.,* 268 U.S. 189, 69 L. ed. 909; *Lemke v. Farmers' Grain Co.,* 258 U.S. 50, 66 L. ed. 458; *Hannibal and St. Joseph R.R. Co. v. Husen,* 95 U.S. 465, 24 L. ed. 527. While recognizing the supreme power of Congress and the agencies created by it over interstate commerce, appellants assert there is another equally well-settled rule which they say is applicable to this case. That rule is stated by Johnson, J., in *S. v. Mobley, supra:* "The states in the exercise of the reserved police power may enact statutes in furtherance of the public health, the public morals, the public safety, and the public convenience, which may burden and bear upon interstate commerce,—provided such statutes are local in character and bear upon interstate commerce incidentally only. (Citations) . . . While it may be conceded that regulations designed to prevent frauds are embraced within the scope of the police power (citations), nevertheless an express purpose to prevent possible frauds does not justify state legislation which really goes beyond the legitimate pale of regulation and interferes with the free flow of interstate commerce."

The State has the right to exercise its police power to require common carriers to provide services reasonably necessary for public convenience which do not unduly burden interstate commerce. *Corp. Comm. v. Railroad,* 137 N.C. 1, affirmed; *Atlantic C. L. R. Co. v. North Carolina Corp. Com.,* 206 U.S. 1, 51 L. ed. 933; *Minneapolis & St. D. R. Co. v. Minnesota,* 193 U.S. 53, 48 L. ed. 614.

The Commission has statutory authority, G.S. 62-121.70, to require bus companies to establish union stations. Such stations are unquestionably convenient to passengers who have to change from one bus line to another. They impose no undue burden on interstate commerce. The State may lawfully require all bus companies, both interstate and intrastate, to use such union stations. *Atchison, T, & S. F.*

*R. Co., v. Railroad Com.,* 283 U.S. 380, 75 L. Ed. 1129; *S. v. Atlantic Coast Line R. Co.,* 72 S.E. 2d 438. The State may, as it has here, require each bus company to provide for the sale of its tickets at the union station. As an incident to the use of the station, the Commission may prescribe the manner of apportioning the cost of operation among the several bus lines which use its facilities.

Respondent does not here challenge the right of the Commission to promulgate such rules, and, in recognition of the Commission's authority to apportion costs, is paying for the maintenance and operation of the union station the same percentage of receipts from tickets sold at its office which it pays on tickets sold in the union station. The challenge is limited to that portion of the rule which denies respondent the right to select the place or places where it will offer for sale transportation over its lines and which denies to respondent the right to select its agent to promote the sale of its services and the right to limit such agent's authority to act for and only for respondent.

The rule promulgated by the Commission properly requires impartiality by the Station manager in the sale of tickets. When he offers for sale, he is the agent for all carriers. But that very requirement effectively stifles competition among the carriers when coupled with the further provision that a carrier may not sell at a place and by an agent of its own selection. The prohibition against proclaiming superior service for the purpose of attracting passengers will, if carried to its logical conclusion, destroy initiative resulting in a uniformly mediocre service to the detriment of the industry, and a resultant reduction in interstate bus transportation.

To limit respondent's right of exercising its franchise as directed by the Commission would not only unduly burden interstate commerce, *Chicago v. Atchison, Topeka & Santa Fe R. Co.,* 357 U.S. 77, 2 L. ed. 1174; *Castle v. Hayes Freight Lines, supra; Nippert v. Richmond,* 327 U.S. 416, 90 L. ed. 760; *Texas Transport & T. Co. v. New Orleans,* 264 U.S. 150, 68 L. ed. 611; *Real Silk Hosiery Mills v. Portland,* 268 U.S. 325, 69 L. ed. 982; *Michigan Public Utilities Com. v. Duke,* 266 U.S. 570, 69 L. ed. 445; *Davis v. Farmers' Co-op Equity Co.,* 262 U.S. 312, 67 L. ed. 996, but would violate the fundamental and constitutional rights guaranteed to every citizen to contract and to utilize to the fullest extent in a lawful manner one's properties to earn a living. *Alford v. Ins. Co.,* 248 N.C. 224, 103 S.E. 2d 8; *Stephens v. Hicks,* 156 N.C. 239, 72 S.E. 313; *S. v. Ballance,* 229 N.C. 764, 51 S.E. 2d 731; *Com. v. Boston Transcript Co.,* 35 A.L.R. 1; *Chicago v. Atchison, Topeka & Santa Fe R. Co., supra; Roller v. Allen,* 245 N.C. 516, 96 S.E. 2d 851; *Hudson v. R.R.,* 242 N.C. 650, 89 S.E. 2d 441;

*Lawton v. Steele,* 152 U.S. 133, 38 L. Ed. 385, as quoted in *S. v. Biggs,* 133 N.C. at p. 738, 739; *Allgeyer v. State of Louisiana,* 165 U.S. 578, 41 L. ed. 832.

Certainly the public health, morals, and safety are not affected by respondent's opening an office where it offers for sale its services and only its services. It declines to furnish information with respect to services provided by the other companies. It cannot be said that this additional office inconveniences the public. The public can, by contacting the union station, still get all of the information with respect to services provided by all of the carriers which it could obtain prior to the opening of respondent's office. This office provides an additional convenience. It is an effort on the part of respondent by its own activities to increase the flow of commerce over its lines, thereby exercising to the full extent the franchise which has been issued to it.

We concur with the conclusion reached by Judge Clark that the rule as applied by the Commission unduly restricts respondent in the exercise of its rights.

Affirmed.